CHARLES S. PLATT *vs.* WILLIAM S. PLATT AND OTHERS.

It is a general rule that specific legacies vest immediately, but where a contrary intention appears, either expressly or by implication, the rule does not apply.

A testator directed that his estate, after payment of debts and expenses of settlement, should be divided into six equal parts, and that two shares should go to his two sons *W* and *C*. He then directed that his interest in a certain manufacturing company, in which he was an equal partner with *W* and *C*, should be fairly appraised and that they should take their shares of his estate in that interest, including certain buildings and water power used in the business and owned by him in severalty, they to pay over to the other heirs any excess of value beyond their equal shares of his estate. Held that the property did not vest in *W* and *C* immediately on the death of the testator, but only upon the distribution of the estate.

Held therefore that *W* and *C* were bound to account to the executors for the profits received from the testator's interest in the partnership during the settlement of the estate.

And that the executors had a right, in a reasonable manner, to inspect the books of the partnership, for the purpose of ascertaining the condition of the business and be able to protect the interests of the estate.

Distributors of an estate are not confined to the original appraisal of the estate made in connection with the inventory, but have power to re-value the property to be distributed, if such re-valuation is necessary to a just and equal distribution.

In valuing the interest of the testator in the partnership, the business being continued, held that the good-will of the business should be valued.

The payment by *W* and *S* of the excess of the value of the property given them above their equal shares of the estate, was not a condition precedent of the vesting of their title to the property. It was either a condition subsequent, or a mere debt or duty arising upon their acceptance of the bequest.

PETITION by one of the executors of the will of Alfred Platt, deceased, for advice as to the construction of the will; brought to the Superior Court in New Haven County. William S. Platt and Clark M. Platt, who were among the respondents, alone made answer to the petition, the former being a co-executor of the will with the petitioner. The following facts were found by a committee.

Alfred Platt, of Waterbury in New Haven County, died on the 29th of December, 1872, leaving a will dated May 18th, 1871, which was duly proved, the parts of which material to the present case are as follows:

"*First.* I order and direct that all my just debts, funeral expenses and charges of settling my estate be first paid and discharged by my executors hereinafter named.

"*Second.* All the rest, residue and remainder of my estate, of whatever name or nature, I direct to be divided into six equal parts or shares, which I dispose of as follows:" * * *

"*Seventh.* To each of my sons, William S. Platt and Clark M. Platt respectively, I give and bequeath one of said shares, to them and their heirs respectively forever. And I further direct that the two shares thus devised and bequeathed shall be provided for and assigned in the following manner, to wit: A fair and just appraisal shall be set upon all the real estate, machinery, tools, stock and property of the A. Platt & Sons' button factory, in which I own one-third interest; also upon the brick fire-proof building, lately erected by me, and the water-power connected therewith; also upon the rolling mill owned by me; and that my said sons have and take these several estates and properties at their said appraisal, as applying upon their respective shares; and whatever their appraised value shall exceed the value of their two shares jointly, they shall pay back such excess to the remaining heirs, to make up the full amount of their respective shares."

The remaining four shares the testator gave to three other sons and the children of a deceased son. The petitioner is one of the sons.

At the date of the testator's decease and at that of the execution of the will, he was possessed of property, real and personal, which was after his decease inventoried and appraised at the sum of $112,960.26. A considerable portion of his estate consisted of his interest as a partner in the co-partnership of A. Platt & Sons, and of certain real estate, owned by him individually, but at the date of his decease and for some years prior thereto, used by the co-partnership in their business. The firm of A. Platt & Sons carried on the busi-

ness of button making, and consisted of Alfred Platt, the testator, and his two sons, William S. Platt and Clark M. Platt, the three being equal owners in the assets of the co-partnership and entitled to equal shares in the profits of the business.

The business was started by Alfred Platt in 1843. In 1847 William S. Platt and Clark M. Platt became partners with him, under an arrangement by which their wages were to be offset against his rent and capital, and profits were to be divided, one-half to Alfred Platt and one-fourth to each of the two sons. In December, 1849, a change was made, by which each of the three partners shared equally in the profits. This last arrangement continued down to 1858, when the partnership was dissolved. Up to that time the business had been conducted under the name of A. Platt & Co. Upon the dissolution of the old firm a partnership was formed between Alfred Platt and Clark M. Platt, to continue the business under the name of A. & C. M. Platt, in which firm the profits were to be divided, one-third to Alfred Platt and two-thirds to C. M. Platt. In January, 1861, the firm of A. & C. M. Platt was dissolved, and a partnership was formed between Alfred Platt, William S. Platt and Clark M. Platt, to continue the business under the firm name of A. Platt & Sons, the profits to be divided equally among the partners. This partnership continued down to the time of the testator's death.

The entire assets of the co-partnership of A. Platt & Sons, at its formation in 1861, did not exceed $5,000 in value, exclusive of real estate owned by Alfred Platt individually, such as water-power and buildings, used by the firm in their business. Neither William S. Platt nor Clark M. Platt at any time paid to their father, or transferred to him, any property in payment for their interest in those assets.

The business of this firm from its formation in 1861, down to the death of the testator, was conducted exclusively by the two sons. No one of the three partners since the organization of the firm contributed to its assets from individual resources. In addition to their shares of the profits William S. Platt and Clark M. Platt each received a salary of $125 per month from the firm.

The brick fire-proof building, referred to in the will, was erected in 1865, and after that date A. Platt & Sons paid the testator $460 rent per annum for the use of that building and of his other real estate used for partnership purposes.

In addition to the business of button making, the firm was also engaged to some extent in the business of rolling metals, and about $10,000 worth of metal, rolled by the firm, was sold by them annually.

The net income of the co-partnership was in 1868, $6,115, of which $6,000 was divided; in 1869, $14,169, of which $6,000 was divided; in 1870, $8,932, of which $4,500 was divided; in 1871, $15,560, of which $7,500 was divided; and in 1872, and to January 16th, 1873, not less than $20,000.

The appraisers appointed by the probate court were well qualified to make the inventory and appraisal, and no evidence was offered or claim made by either party that the inventory returned by them was not a full and complete one of all the estate, or that the appraisal was not a fair and just valuation of the testator's property, except that it was claimed by the petitioner that in putting a valuation upon the interest of the testator in the partnership of A. Platt & Sons, the appraisers did not know or take into account the amount of profits which had been made by that firm in previous years. The petitioner demanded of the surviving partners a statement of the profits during the three or four years prior to the testator's death, and claimed that these profits should be considered by the appraisers as an element of value in determining the value of the testator's interest in the partnership assets. The surviving partners denied their obligation to furnish such statement, and claimed that it could not properly be considered by the appraisers, and refused to furnish it upon such demand; but shortly before the appraisers had finished their labors, the surviving partners made a formal proposal to the appraisers to furnish such a statement, if a majority of the board should, through their chairman, request it in writing; but no such request was made.

For the purpose of showing upon what basis the appraisal was in fact made, the respondents offered as a witness one of

the appraisers, who testified that before the appraisers entered upon their duties, the will of the testator was read to them, and their attention especially directed to the seventh section thereof; that great pains were taken by them to make the inventory and appraisal full, complete and accurate; that various sessions, extending over a period of several months, were held before it was finally completed, and that they considered that the appraisal made by them might be the final appraisal under the seventh section for the purpose of determining the value of the testator's interest in the firm of A. Platt & Sons for distribution; that the tangible property of the firm was appraised on the basis of a continuance of the business, and that such tangible property would have been appraised at 33⅓ per cent. less than the value actually put upon it if the appraisers had valued it with a view to the closing out of the business and a disposal of the effects of the firm at auction; that the appraisers arrived at the result of $33,605.53 as the value of the interest by first appraising the value of the real estate and water privileges, tools, stock, and other tangible property of the firm, including the excess of the value of its bills receivable over the bills payable, at the sum of $92,817.71; that to this sum the appraisers added the sum of $8,000, as the probable prospective value of patents, improvements in machinery kept secret and not patented, and the good-will of the business of the firm; and that this total being divided by three, they returned the result ($33,605.53) as the value of the interest of the estate of A. Platt in the firm of A. Platt & Sons.

It was admitted on the hearing that there was no agreement between any of the devisees that the appraisal should be a final one, and that all the devisees, other than the surviving partners, supposed and believed it would not be a final appraisal.

No substantial part of the stock on hand at the time of the testator's decease now remains; but it has been replaced by manufactures of the same sort and of substantially the same value.

William S. Platt and Clark M. Platt, the surviving partners

of the firm, have ever since the decease of the testator used in the business, and are now using therein, all the real estate, tools, stock, property, and other estate, belonging to the button factory, and being the same real estate, machinery, tools, stock and property referred to in the seventh section of the will; and by such use they have made profits which were admitted to be substantial in their character, but the exact amount of which the committee was unable to determine. They have at all times refused to account for such profits, although demand has been made on them by the petitioner for that purpose on several occasions prior to the institution of the present suit, and by reason of such refusal the petitioner has been unable to ascertain the exact amount ot such profits.

Shortly after the death of the testator the surviving partners received legal advice to the effect that the devise to them was specific, and that the interest of the estate in the partnership assets vested in them upon the death of the testator. During the period since his death all the devisees have supposed that the business was being conducted by the surviving partners on joint account, and that the estate would be entitled to one-third of any profits that might be made in the business; and during the same time the surviving partners have acted upon the assumption and belief that they were conducting the business for their sole account.

No offer has been made by the surviving partners, or either of them, to pay back any excess of the appraised value of the estate mentioned in the seventh section of the will, over and above the value of their two shares jointly, although such appraised value exceeded the value of the shares, nor has any demand been made on them to pay back such excess by any of the other devisees in the will.

Upon these facts the case was reserved for the advice of this court.

*Webster* and *H. B. Harrison*, for the petitioner.

1. The legacies to William and Clark Platt are not specific legacies. It is very questionable whether a partner's interest in the partnership can be made the subject of a specific legacy.

A partner cannot give to his legatee any specific article of the partnership property, or any specific interest in any specific article of that property; his interest being simply his equitable interest in such partnership fund as may remain after payment of debts and the settlement of the partnership affairs. It is evidently the intent of the will that William and Clark shall each have one-sixth of the estate, at all events. Therefore, if the testator had conveyed away in his life-time, after the execution of the will, all the property particularly named in the seventh section, they would not thereby have lost their legacies. But if their legacies were specific, such conveyance would have defeated their legacies. 2 Redf. on Wills, 531; *Mullins* v. *Smith*, 1 Drew. & Sm., 204; *Gordon* v. *Duff*, 24 Jur., 1046; *S. C.*, 28 Beav., 519; *Loring* v. *Woodward*, 41 N. Hamp., 391. The legacies are general; but the testator points out particular property to be used in paying them.

2. Whatever be the exact character of the legacies in question, yet it is clear that the testator did not intend that the property mentioned in the 7th section should vest in William and Clark specifically and absolutely at the moment of his death. We are to look at the whole will to learn the testator's intent. 2 Redf. on Wills, 433. Such a construction would give them absolutely, as their own, all the profits and income accruing from the property from the moment of the testator's death to the time of the final distribution of the estate. But these profits and income must accrue to, and be collected by, the executors, as an increment of the estate. William and Clark will share with their co-legatees in this increment at the final distribution. If then they are to have exclusively the benefit of the increment of this property, they get, to that extent, a pecuniary advantage over their co-legatees.

3. No particular piece of property vested in any of the legatees in severalty at the time of the testator's death. What vested in each was a present ownership of one undivided sixth part of so much of the estate as should remain for distribution; such ownership involving the right to have that sixth set apart to the legatee in severalty, according to law, by the distributors. *Roorback* v. *Lord*, 4 Conn., 349; *Kings-*

*bury* v. *Scovill*, 26 id., 349, 352; *Holcomb* v. *Sherwood*, 29 id., 418. William and Clark have no additional right except the right to "take" the property pointed out in the 7th section "as applying on their respective shares." That right must be exercised in such a manner as not to make either of their shares more than one-sixth, or either of the shares of the other legatees less than one-sixth of the whole estate. To let them take their shares in severalty before the other legatees take theirs would, as we have seen, give them an advantage over their co-legatees, contrary to the controlling intent of the will. Therefore all the legatees must take their shares in severalty at the same time. The other legatees cannot take their shares in severalty until the time of the distribution. William and Clark, therefore, must take their shares in severalty at that time. The will directs that the estate shall be "divided" among six legatees without appointing any person to divide it. Consequently it must be divided by distributors appointed by the court of probate. *Pinney* v. *Bissell*, 7 Conn., 21. Until such division is made none of the legatees can be entitled to seize upon any part of the estate and hold it in severalty. This intention of the will is manifested, not negatively alone, but positively, by the express provisions and necessary implications of the will.—1st. Necessary implications. If the pieces of property enumerated should be, as to value, in "excess" of two-sixths of the estate, William and Clark must "pay back such excess" to the other legatees. But the will allows no credit to William and Clark as to such payment. They must, therefore, "pay back" such "excess" at the time when they "take" the property which is the consideration of the obligation to "pay back." Again, the will does not appoint any person to determine, as between the parties in interest, whether there is any "excess," and, if any, how much. Those questions, therefore, are left to be determined, according to law, by the distributors in the act of distribution. At the moment when the distribution is consummated, therefore, and not before, the amount of the excess, if any, will be determined. At the same moment, and not before, and by the same act, the persons who are to receive

payment of the excess will also be determined; for the claim for such payment must be set out and distributed, as part of the estate, to one or more of the co-legatees, by the distributors. *Bissell* v. *Bissell*, 24 Conn., 241. William and Clark, therefore, cannot take the property until the act of distribution has been consummated.—2d. Express provisions. Section 1st of the will provides expressly that the debts and "charges of settling" the estate shall be "first paid." Then, and not before, "all the rest, residue and remainder", shall "be divided" into "six equal parts." This "rest and residue" includes the property specified in the 7th section, and two of the equal shares into which the estate is to be divided after the charges of settling the estate have been paid are the two shares of William and Clark. These shares therefore are not to vest in them in severalty until they so vest by the act of distribution.

4. It follows that William and Clark are chargeable for their use of the property specified in the 7th section since the death of the testator. The executors are entitled to recover, at their own option, either a reasonable sum for such use, or the profits which William and Clark have in fact made by the use of the testator's interest in the partnership property, together with the rents which have accrued on the real estate of the testator used by them since the testator's death. Collyer on Part., (Perkins' ed.,) §§ 130, 324, 325, 328; Story on Part., §§ 372, 343; Gow on Part., 432; *Sigourney* v. *Munn*, 7 Conn., 11, 21.

5. The executors have the right to examine, at reasonable times and in a reasonable manner, the books and accounts in the hands of the surviving partners. This necessarily follows from their right to a share in the profits.

6. Distributors, charged with the duty of distributing an estate into shares of equal value, must distribute it according to the valuation which they themselves put upon it and upon its several parts at the time of the distribution. Otherwise justice could seldom be done in such cases. For it almost always happens that the constituent parts of an estate and the values of those parts undergo changes between the time

of the original inventory and the time of the distribution. Such distribution, therefore, involves an act of valuation and appraisal on the part of the distributors. And such valuation and appraisal must be "fair and just." *Beach* v. *Norton*, 9 Conn., 197; *Davenport* v. *Richards*, 16 id., 317; *Howard* v. *Howard*, 19 id., 317; *Moore* v. *Holmes*, 32 id., 558.

7.  The "fair and just appraisal" called for by the will, must be held to mean the fair and just appraisal which the law requires the distributors to make, rather than the fair and just appraisal which the law requires the executor with his assistants to make. The appraisal directed is not to be made for the purposes of the ordinary inventory and appraisal. *Hasbrouck* v. *Hasbrouck*, 37 Barb.. 579. It is to be made for the specific purposes of the *distribution*, and especially as a part of the process whereby the shares of William and Clark are to be "provided for and *assigned*," that is, distributed. The testator clearly intends that by the act of distribution the several legatees shall receive shares *then* equal in value. If the distributors were bound by the first appraisal they might do great injustice and defeat this fundamental purpose of the will.

8.  The good-will of the business ought to be taken into account by the distributors in distributing to William and Clark the interest of the testator in the partnership property. The law recognizes the good-will of a business as something which may have substantial value. While courts admit that in many cases they are unable to protect that value, and to cause it to inure to the benefit of the persons who are justly entitled to it, they are disposed to protect it whenever they can, and as far as they can. *Smith* v. *Everett*, 27 Beav., 446; *Mellersh* v. *Keen*, 27 id., 239; *S. C.*, 28 id., 453; *Johnson* v. *Helleley*, 2 DeG. J. & S., 444; *Williams* v. *Wilson*, 4 Sandf. Ch., 380.

9.  If there should be an "excess," then, by the act of distribution, the property will vest in William and Clark upon condition; the condition being that they "pay back" the excess. *Wheeler* v. *Walker*, 2 Conn., 196, 200; *Judd* v. *Bushnell*, 7 Conn., 204, 211. The duty of performing the

condition will arise instantly upon the distribution. 2 Redf. on Wills, 662; *Bell* v. *Raymond*, 20 Conn., 342; *Ackerly* v. *Vernon*, Willes R., 153, 154, 157, 158. If that duty should not be immediately performed by them, the other legatees could enforce a forfeiture of the estate so given them. So long as the forfeiture shall not be enforced, the estate of William and Clark will stand charged in equity with the claims of the respective distributees of such excess for their portions of such excess respectively. *Matthewson* v. *Saunders*, 11 Conn., 144; *Hogeboom* v. *Hall*, 24 Wend., 146. Upon forfeiture, if it should be enforced, a new distribution could be and should be made. *Webster* v. *Merriam*, 9 Conn., 225, 230; *Bissell* v. *Bissell*, 24 id., 247.

*J. S. Beach* and *Morris*, for the respondents.

To ascertain the intentions of the testator it is necessary to look at the circumstances under which the will was made. The testator had been actively engaged in the button business, either alone or in company with others, from 1843 till 1861. During all this time he took an active part in the management of the business, but had not been very successful. In 1861 the assets of the business did not exceed $5,000. In 1861 the partnership was formed which lasted until the death of the testator. In this partnership the deceased had one-third interest, but took no active part in the management. William and Clark Platt, the devisees and legatees named in the 7th section of the will, had the exclusive management of the business, and under them it became very successful. The business of not more than $5,000 in 1861, developed into a business, in 1873, of over $100,000, in addition to the dividends which had been made to the partners. A large share of the property left by the testator had thus arisen from the successful management of the button business by the surviving partners.

It is fair to presume that the testator had some object in view in making his will. If he had no other intention than that each child should have an equal share, there was no necessity for a will; the law would have given them that. But

if he died intestate, the button business would be brought to a close. Neither the administrators nor the surviving partners could continue it. To close up the business would be damaging to the interests of all parties, and lessen the amount to be distributed. The record shows that the appraisers valued the tools and machinery one-third higher than they would have done if the business was not to be continued. It is fair to presume that the testator understood all this, and by his will undertook to guard against this depreciation and loss. How did he guard against this? Not by authorizing his executors to continue the business, but by specifically bequeathing the same to the very parties who had built it up, who best understood it, and in whose hands it would be the most valuable, so that they could have it from his death, and preserve its value. We contend therefore:

1. That the bequests to William and Clark Platt in the 7th section of the will are specific. The particular quality which constitutes their specific nature is this, that they are things which the testator has clearly distinguished and separated from the rest of his estate at the time of his death. These particular things were all in existence at the time of the testator's death. The bequests cannot be satisfied except by the delivery to them of these specific things. The testator does not provide by his will that their shares shall be paid in money raised from the sale of these things, but that they shall have and take these identical things at a fair and just appraisal. There is no other property of the estate which can satisfy these bequests, there are no other things in the world which can do so, for they are the only things of the kind in existence. *Stephenson* v. *Dowson*, 3 Beav., 342, 350; *Fryer* v. *Ward*, 31 id., 602; *Tifft* v. *Porter*, 8 N. York, 518. It will be noticed that quite a large proportion of these bequests is real estate. A devise of real estate *is always specific.* 1 Roper on Leg., 194; 2 Redf. on Wills, 471. The testator states correctly what his interest was in the partnership of A. Platt & Sons. This interest was a thing which could be specifically bequeathed. *Ashburner* v. *Macguire*, 2 Brown C. C., 108; *Chaworth* v. *Beech*, 4 Ves., 555; *Fryer* v. *Ward*,

31 Beav., 602; *Ellis* v. *Walker*, Ambler, 309. The mere fact that the testator provides that if the appraised value of the property shall exceed the value of their two shares they shall pay back the excess to the other heirs, does not destroy the specific nature of the bequests. A specific bequest may be charged with the payment of debts, or legacies, and still remain specific. *Jenkins* v. *Hanahan*, 1 Cheves Eq. R., 129; *Webb* v. *De Beauvoisin*, 31 Beav., 573; *Burnett* v. *Strong*, 26 Miss., 116. The fact that the testator first provides that his estate shall be divided into six equal shares, and then gives two of the shares to William and Clark Platt, and directs what particular property they shall take for their shares, does not interfere with the specific nature of the bequests. The same bequest may be specific where it can be specifically satisfied, and general where it cannot. *Fontaine* v. *Tyler*, 9 Price, 94; *Mullins* v. *Smith*, 1 Drew. & Sm., 204. It is plainly manifest that the testator had two things distinctly in view in making his will: 1st. That the shares of his sons in a money value should be equal; 2d, that William and Clark Platt should have the specific property described in the 7th section of the will. Therefore he provided that if, upon a fair and just appraisal, these specific things given to them shall exceed their shares, they shall pay back the excess to the other heirs, to make their shares equal.

2. William and Clark Platt are entitled to the use, income, and profit of the property given to them, from the death of the testator. Specific bequests are considered as severed from the bulk of the testator's property by operation of the will from the death of the testator, and as specifically appropriated with their increase and emolument, for the benefit of the legatee or devisee from that period; so that interest is computed on them from the death of the testator, and it is immaterial whether the enjoyment of the principal is postponed by the testator to a future period or not. 2 Roper on Leg., 1245, 1250; 2 Wms. Exrs., 1283; *Jacques* v. *Chambers*, 2 Colly., 435.

3. The bequests to William and Clark Platt are not upon condition. He directs that they shall take these several

estates and properties at their appraisal as applying upon their respective shares, and whatever their appraised value shall exceed the value of their two shares jointly, they shall pay back such excess to the remaining heirs to make up the full amount of their respective shares. This creates only a private personal duty, founded on their election to accept and enjoy the bequests made to them in the will. They have elected to accept them, and consequently are personally liable to pay to the remaining heirs the excess, if any, as soon as the same can be ascertained. *Fox* v. *Phelps*, 17 Wend., 393; *Lord* v. *Lord*, 22 Conn., 602; *Olmstead* v. *Brush*, 27 id., 530, 536. The excess has never been ascertained, and cannot be until the estate is settled and all debts and expenses of settlement are paid. And they are entitled to a reasonable time to pay, after the exact amount is ascertained.

4. But if the property bequeathed to them is upon condition, then it is upon condition subsequent, and does not prevent the property specifically given them from vesting immediately upon the death of the testator. The words of the will import a present interest, and make no other disposition of the property. *Finlay* v. *King's Lessee*, 3 Pet., 346, 377; *Taylor* v. *Mason*, 9 Wheat., 326; *Burnett* v. *Strong*, 26 Miss., 116; *Stark* v. *Smiley*, 25 Maine, 201; *Hayden* v. *Stoughton*, 5 Pick., 528; *Howard* v. *Turner*, 6 Greenl., 106.

5. The testator provides that "a fair and just appraisal" shall be made of the property specified in the 7th section, and that William and Clark Platt shall have and take the property at the appraisal. In the settlement of estates the word " appraisal" has a clear and definite meaning. The statute provides when an " appraisal" shall be made. Rev. of 1875, p. 387. Such an appraisal as the law directs to be taken within a limited time after the granting of letters testamentary, manifestly was in the mind of the testator. He did not mean upon distribution, for, if he had, his will would have said so. A *re-valuation* of property by distributors, and an *appraisal* of property by appraisers, are quite different things. The distributors, in making a distribution, *may, or may not*, re-value the property then offered to them for distribution. But ap-

praisers *must* appraise the value of the property as it was at the testator's death. Property specifically devised and bequeathed is not set out by distributors. The title to the same does not depend upon distribution. The appraisal taken is admitted to have been made by competent persons, and to be a fair and just appraisal.

6. The question is raised by the petition whether the goodwill of the business should have been appraised. If this was an open question there are numerous authorities to the effect that the good-will should not be appraised, as it belongs to the surviving partners. *Robertson* v. *Quiddington*, 28 Beav., 529; *Lewis* v. *Langdon*, 7 Sim., 421; *Hammond* v. *Douglas*, 5 Ves., 539. But in this case it is no longer an open question. The good will has been appraised. The surviving partners are the only persons that had a right to complain. They have elected to take the property at the appraisal.

CARPENTER, J. The testator, after providing for the payment of his debts, funeral expenses, and charges of settling his estate, directed that all the rest and residue of his estate be divided into "six equal parts or shares," one of which he gave to each of his children, and the representatives of a deceased child. The seventh clause in the will, and the one on which the principal question in the case arises, is as follows:

"*Seventh.* To each of my sons, William S. Platt and Clark M. Platt, respectively, I give and bequeath one of said shares, to them and their heirs respectively forever. And I further direct that the two shares thus devised and bequeathed shall be provided for and assigned in the following manner, to wit: A fair and just appraisal shall be set upon all the real estate, machinery, tools, stock and property of the A. Platt & Sons' button factory, in which I own a one-third interest; also upon the brick fire-proof building lately erected by me; also upon the rolling mill owned by me, and the water power connected therewith; and that my said sons have and take these several estates and properties at their said appraisal, as applying upon their respective shares; and whatever their appraised value shall exceed the value of their two shares jointly, they shall

pay back such excess to the remaining heirs, to make up the full amount of their respective shares."

The great question in the case, and the one on which nearly all the other questions hinge, is, whether the shares given by this clause vested at the death of the testator, or whether they take effect, like the other shares, upon the distribution.

The respondents claim that the devises and legacies given to the surviving partners are specific, and therefore that they vested immediately on the death of the testator. That such is the rule applicable to specific legacies generally is admitted. But that rule rests upon the presumed intention of the testator; and when a contrary intention appears, either expressly or by implication, the rule does not apply.

We are to look therefore at this will for the purpose of ascertaining the intention of the testator.

The second clause divides his estate into "six equal parts or shares." The language used manifestly contemplates one division or distribution, and one only. It is a division of the whole of the residue of his estate, and not of a part of it; and it is to be made after the charges of settling his estate are deducted; clearly implying that the distribution is to be made at the ordinary time, at the close of the settlement of the estate.

Equality is a prominent feature, not only of the second and seventh clauses, but of the whole will. His intention that all his children shall share equally is clearly expressed, and we are bound to give effect to that intention. If the surviving partners are permitted to take their shares immediately, and are entitled to receive the income and profits arising therefrom during the settlement of the estate, and also to share in the income from the remaining estate, they gain a pecuniary advantage over the other legatees, which destroys the equality, and does violence to the manifest intention of the testator.

We therefore interpret the seventh clause as meaning simply, that when the estate is distributed, the two partners shall take all the testator's interest in the partnership property and the other property specified; and if its valuation shall exceed the amount of their shares, the excess shall be paid to the other

heirs, so as to preserve the equality. Their legacies are specific, in the sense that they are to be satisfied from certain specified property; but they are not specific in such a sense as to require the application of a rule of law which will defeat the plain and unmistakable intention of the testator.

It follows logically from what has already been said, that the surviving partners, being legatees, must account to the executors for the profits which they have received from the testator's share in the partnership property during the settlement of the estate.

For the same reasons we think the executors are entitled, at reasonable times, and in a proper manner, to inspect the partnership books. This seems necessary in order that they may know and protect their rights.

The next question has reference to the appraisal spoken of in the seventh clause. The question is, whether the appraisal made when the inventory was taken, or some other appraisal to be made, is to be the basis of distribution.

We regard this as a question of fact rather than a question of law. Courts of probate in this state, as to all matters within their jurisdiction, have ample powers to administer both law and equity. It seems to be the practice, and both the practice and its legality are recognized by numerous decisions of this court, for distributors appointed by courts of probate to make an appraisal, or re-valuation, of any property they are called upon to distribute, in all cases when it is necessary to a just and equal distribution of the estate. *Beach* v. *Norton*, 9 Conn., 197; *Davenport* v. *Richards*, 16 Conn., 317; *Howard* v. *Howard*, 19 Conn., 317; *Moore* v. *Holmes*, 32 Conn., 558.

There is not the slightest difficulty in pursuing that course, if necessary, in the present case. If not necessary, but a just distribution can be made upon the appraisal already existing, we see no legal objection to pursuing that course. In one way or the other, or in some other manner, the court of probate is competent to make distribution so as to do no injustice. If the substantial requirements of the will are complied with, the manner of doing it is not very material.

Platt *v.* Platt.

We are clearly of the opinion that the good-will of the business carried on by the partnership—that business being continued after the death of the testator—is proper to be considered in estimating the value of the testator's interest in the partnership. That was done in the appraisal which has been made, and should be done in any appraisal which may hereafter be made.

We do not regard the payment by William S. and Clark M. Platt of the excess required by the seventh clause, as a condition precedent to the vesting of their respective shares. The first sentence gives the legacies unconditionally. The property to be applied to their payment is next mentioned, with the requirement that the excess, if any, shall be paid to the other heirs. We think the payment is either a condition subsequent, or a mere debt or duty arising upon the acceptance of the legacies. Whether it is the one or the other, and what remedy the other heirs may have in case payment is refused, are questions which we need not consider now.

The Superior Court is therefore advised:

1st. That the legacies to William S. and Clark M. Platt will vest in them when the estate is distributed.

2d. That the executors are entitled to the profits and income of the testator's interest in the partnership property during the settlement of the estate.

3d. That they have a right at reasonable times and in a proper manner to inspect the partnership books.

4th. The "fair and just appraisal" may be the one already made, or the distributors may make another, as may be necessary to make a just and equal distribution.

5th. In making the appraisal the good-will of the business should be considered.

6th. The payment of the excess is not a condition precedent, but is either a condition subsequent or a mere debt or duty.

In this opinion the other judges concurred; except PHELPS, J., who did not sit.