Peckham v. Lego.

————— ‹•••›. —————

WILLIAM F. PECKHAM, EXECUTOR, vs. JOHN LEGO AND OTHERS.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A will gave to *W* and his wife the "use and improvement" of certain estate "during their natural lives," with the following further provision: "Should it be necessary for their personal comfort to use any portion of said property, it is my will that they do so, exercising good judgment, and saving as much of it as possible for the children born to them." Held—

1. That the life estate given to *W* and his wife was not enlarged to a fee by the provision that they might, if necessary, use any portion of the property for their personal comfort.

2. That the remainder was given to the children of *W* and his wife, and not to the heirs of the testatrix generally.

The words "necessary for their comfort," held to mean "necessary for their support."

While *W* and his wife were to exercise their judgment as to what was necessary for their support, their judgment was not final, but could be reviewed by a court of equity or by the probate court.

They were to take what was needed in reference to their situation and condition in life.

The court will, if possible, avoid any construction of a will that will result in partial intestacy.

[Argued June 6th—decided September 9th, 1889.]

SUIT to obtain a construction of the will of Mary Yemmans; brought to the Superior Court in New Haven County, and reserved for the advice of this court. The case is fully stated in the opinion.

*S. A. York*, for Grace A. Peckham, one of the defendants.

*G. P. Ingersoll*, for the heirs at law.

LOOMIS, J. This suit was brought to obtain a judicial construction of the last will of Mary Yemmans, which is as follows:

" 1. I give and bequeath to my brother, John Lego, five hundred dollars.

" 2. I give and bequeath to W. Frank and his wife Grace A. Peckham, the use and improvement of the whole of the remainder of the estate of which I may die possessed, both real and personal, during their natural lives. Should it be necessary for their personal comfort to use any portion of said property, it is my will that they do so, exercising good judgment, and saving as much of it as possible for the children born to them.

" 3. I appoint W. Frank and Grace A. Peckham executors of this my last will and testament."

The following facts are found by the court:

The heirs at law in this case are John Lego, a brother of the testatrix, and the children of deceased brothers and sisters. Grace A. Peckham, one of the defendants, is a niece of the testatrix, and lived with and was brought up by her as a member of her family. After the marriage of W. Frank Peckham with said Grace, she and her husband and the testatrix lived together, with occasional intermissions, until the death of the testatrix. About the time of the execution of the will the testatrix went to live with Mr. Peckham and his wife, and continued to reside with them to the time of her death. The other heirs at law, though not intimate, were on friendly terms with the testatrix. The property and estate of the testatrix came to her by the will of her late husband, Joseph Yemmans. A few days after the death of her husband the testatrix made and executed the will, it having been drawn by Rev. E. E. Beardsley of New Haven.

The first question is, whether, under the second section of the will, Mr. and Mrs. Peckham take a fee or a life estate.

The intention of the testatrix, which is to control, must here be ascertained from the language employed by her in making the gift. In the first section she employed direct and fitting words in making an absolute gift to her brother,

and had she intended a similar gift of the residue to the Peckhams similar language most naturally would have been employed, being already in her mind. Instead of that however, we find language of a contrary import; language which is irreconcilable with the idea that she intended to give other than a life estate.

The language is doubly restrictive. In the first place the bequest is guarded by the words " use and improvement," which alone would distinguish the gift from a fee, but to put it beyond all controversy, the tenure of the holding is expressly given as " during their natural lives." If the section stopped here it is conceded that a doubt as to the meaning would be impossible ; but the words which follow : " Should it be necessary for their personal comfort to use any portion of said property, it is my will that they do so, exercising good judgment, and saving as much as possible for the children born to them," it is contended remove the restriction twice applied in the preceding language, and enlarge what was plainly only a life estate and convert it into a fee. We fail to discover any such intention. The language necessarily implies a consciousness on the part of the testatrix that she had given only a life estate ; but it occurs to her that the income may be so limited, and their circumstances so reduced, that they may lack the means of comfortable support, and she adds the clause under consideration to meet such an emergency, but this clause was never intended to sweep away the life estate. It was only to be called into play by an emergency—by the *needs* of her beneficiaries. The right to resort to the principal was founded on necessity and restricted by necessity. The words are " should it be necessary." If it should not be necessary it is all a mere life-estate ; if it is, then the restriction is that all except the necessary portion so taken remains a mere life estate. It is said that the words " necessary for their personal comfort," are indefinite in meaning and practically unrestricted, and therefore inconsistent with any remaining life estate. We cannot accept this view. One of the definitions of " comfort " given in Webster's Dictionary,

as applied particularly in law, as well as in some other things, is "support." The language therefore must be held to mean "necessary for their support."

But it is said that it is again rendered indefinite by being all left to the judgment and discretion of the legatees as to the kind and extent of the support needed; that they may use the principal to gratify their mere whims and fancies. We do not think any such authority is given.. For the time being they exercise their judgment, but are not the ultimate judges of what is necessary, but the Superior Court, as a court of equity, and perhaps in some cases the probate court, will review and revise their judgment, and determine whether the exigency had arisen to give them any right to resort to the principal, and if so, whether they have exceeded the liberty given them.

But our attention has been called particularly to the concluding words enjoining the exercise of good judgment on their part. We do not think the question of necessity is to be so determined. But the good judgment enjoined is to be exercised in saving as much as possible for the children within the field given of what is necessary. What is necessary in law does not always, nor often, mean a strict absolute necessity. It is a relative term and variable according to circumstances. It means here, as in the case of the obligation of a husband to furnish necessaries for his wife, what is needed in reference to the situation and condition in life, and within those limits much may be saved by the exercise of good judgment.

If they act within the legal limits of a necessity in law they may not be responsible, but are if they appropriate a portion of the principal when not needed for their support.

If now we have discovered the intention of the testatrix as evidenced by the language of her will, a reference to artificial rules of interpretation would seem unnecessary, but as some of these rules were referred to in the discussion of this case as being opposed to the construction we have adopted, a brief discussion of the matter may seem desirable.

*Hull* v. *Culver*, 34 Conn., 404, was referred to as indors-

ing the principle that " where an estate for life is given, with power in the devisee to sell and dispose of it at his own discretion and for his own use, he takes a fee." In *Lewis* v. *Palmer*, 46 Conn., 458, CARPENTER, J., in giving the opinion of this court, very properly calls attention to the fact that the above proposition was stated as one which the counsel on both sides conceded, and that the court without discussing it immediately passed to the consideration of another question regarded as controlling, namely, whether the power of sale as there given was absolute or contingent. The language to be interpreted was as follows : " I give all my estate to my beloved husband, Ransom Culver, to use and improve during his natural life, and if he should want for his support to sell any part or. the whole of it for his maintenance, my will is that it shall be at his disposal." In construing this language the court said : " The great object is of course to ascertain the intention of the devisor. If she had designed to give her husband the entire estate, it would have been very easy and very natural for her to say it in short and direct terms, or to place the disposal of it at his discretion, without imposing a condition. But she gives him the disposal only ' if he should want for his support to sell any part or the whole of it for his maintenance.' This language very clearly implies a limitation or restriction of the power to a case of necessity. The sale is to be proportioned to the extent of the necessity."

It will be seen that the court construed the authority to sell substantially as we do in the present case. So that even if the proposition referred to is a sound one, it would not apply to this case any more than to that one. But the proposition has been materially modified by the later utterances and decisions of this court. In *Lewis* v. *Palmer, supra*, the words of the will were : " I do give and devise unto my said sister, Sarah Palmer, the use of all the rest of my real estate that I may have or leave at my death, during her natural life, and for her to dispose of as she may think proper, right or just." Here was plainly an unrestricted power of disposal at discretion, and yet the court did not hold that

the legatee took a fee. The question it is true was left open, as the case could be disposed of upon another ground, yet the discussion plainly showed that the court was prepared to hold that a life estate created by express ·rords would not be enlarged to a fee by the power of sale.

Afterwards, in *Grover* v. *Stillson*, 56 Conn., 316, the court was called upon to construe a will where the words were: "I give the residue of my estate, both real and personal, unto my sisters Polly A. Stillson and Mary B. Stillson, for the term of their natural lives, hereby empowering my said sisters to dispose of any portion of my estate, either real or personal, if they should so desire." The court held that the sisters took only a life estate notwithstanding their unrestricted power of disposal, and in giving the opinion of the court, CARPENTER, J., said: "We are asked to say that the power of sale enlarges an express life estate to a fee. If we do so, what becomes of the intention of the testator? His intention to give pecuniary legacies to the parties named, and the residue to the orphan asylum, is just as certain, and, we may add, just as provident, as the intention to provide for his sisters; and that intention by the construction contended for is wholly defeated. The power of sale may, in doubtful cases, aid in ascertaining the intention; but to give it an artificial and technical force and thereby defeat the manifest intention of the testator is wholly inadmissible."

These utterances we think are in accord with the decided preponderance of judicial authority in the United States.

Chancellor KENT, in volume 4, side page 536, seventh edition of his Commentaries, summarizes the settled doctrine as follows: "If an estate be given to a person generally, or indefinitely, with a power of disposition, it carries a fee; unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case the express limitation for life will control the operation of the power, and prevent it from enlarging the estate to a fee."

It remains for us to consider a still more difficult question in regard to the disposition of the reversion—whether it be·

longs to all the heirs of the testatrix as intestate property, or whether the will takes hold of it and sufficiently designates the persons who are to take.

The language of the will is so unusual and so doubtful that, at the outset, we feel embarrassed by two independent principles of law operating in different directions at the same time. One requires the court to avoid if possible any construction which would result in partial intestacy. *State v. Smith*, 52 Conn., 563 ; *Warner* v. *Willard*, 54 Conn., 472. The other cautions us not to disinherit the heirs at law unless on so strong a probability that an intention to the contrary cannot reasonably be supposed. Wigram on Wills, 167 ; *Wilkinson* v. *Adams*, 1 Ves. & B., 456.

The residuary estate, it is conceded, is not expressly disposed of by the terms of the will, but there are words evincing, we think, an intention and desire on the part of the testator as to the disposition. We refer to the closing words of section second. The testatrix having in mind the life estate she has given, adds a conditional and restricted permission to use a portion of the principal or residuary estate, but in that connection enjoins the life tenants, in availing themselves of the permission, " to use good judgment, saving as much as possible for the children born to them." This implies that the children of the life tenants are to take the remainder,—all of it.

But does it imply that they are to take it under the will or simply as her heirs at law? Her heirs are numerous, the record gives the names of eight besides the Peckhams, and the portion which the latter could inherit by right of representation would be insignificant as compared with the whole. If she referred at all to her own heirs she would have so stated, and would not have restricted the benefit of the saving to children born to them, the Peckhams.

We do not think the language can be satisfied at all with any such reference as suggested, but that the words imply that the Peckham children are to take the remainder under the will, and not because they may become her heirs at law

with many others. The question of implied gifts is in every case one of intention.

There are several instances where a devise by implication has received the sanction of this court. We will mention only two. The first is the case of *Minor* v. *Ferris and others*, 22 Conn., 371. A testator, after devising his real estate for the benefit of his wife and directing his executor to sell it within one year and to invest the proceeds in some safe property to remain a fund for her support during life, gave to his sister, if living at the decease of his wife, and if not to her children, whatever of the property might be left. He then bequeathed to his sister, in general and unrestricted terms, all his personal estate. In a subsequent clause he authorized his executors, if they deemed it advisable, to extend the time of selling the real estate for eighteen months, and expressed his opinion that if the property was well sold and invested the interest would support his wife; then he repeated his bequest to his sister, or if deceased to her children, of all his personal property; adding "if my wife has sufficient to support her." Counsel for the sister contended that the last clause must either be rejected as without meaning, or, as explained by the context, it must be construed to mean "as my wife has sufficient to support her," the testator having just expressed an opinion to that effect; but the court did not accept this view, but upon the ground of a prevailing intention apparent on the face of the will to provide for his wife ample support during life, and that the last clause was a qualification of preceding bequests, held that all the personal property was by implication given for the benefit of the wife during her life, upon the same terms as those upon which the real estate had been devised.

The other case is that of *Holbrook* v. *Bentley*, 32 Conn., 502, where a testator bequeathed to his wife the use of three thousand dollars, and also gave her absolutely all his household furniture with a few exceptions mentioned, and then added a clause in this form:—"What follows is after the death of my executrix" (his wife). "I do will and bequeath all the remainder of my estate indiscriminately, be it

money or household furniture, equally to all my grandchildren." There was thus left a considerable amount of personal property not expressly disposed of during the life of the widow, and which would, if regarded as falling into the residuum, be. left in the hands of the executrix to accumulate for the grandchildren. It was held, as this intention was improbable, and there were no words to indicate it, and no provision that the executrix should hold the property as trustee for the grandchildren, that the will should be construed as giving by implication to the widow the use of this property for life. Here it will be seen there were no express words at all indicating a desire that the widow should have this property, and all her express bequests were precisely defined. It seems to us that in the present case there is at least as good a foundation in the will for the implication of a devise as in the cases cited.

Many similar illustrations of implied gifts might be cited from other jurisdictions, but we will refer to two cases only.

In *Edens* v. *Williams*, 3 Murph., 37, there was a gift of certain property to the testator's wife, and if she should prove *enceinte*, such child should be supported and educated out of the income of the property so left her, " as well as all the property I may die possessed of," with a residuary bequest to nieces. The court held that the whole estate was given by implication to the wife and child on its birth. In *Piper's Estate*, 33 Leg. Inst., 228, a direction that the mansion house should not be sold during the daughter's life, but that she might reside in it, was held to give a life estate.

The Superior Court is advised that under the will of Mary Yemmans, W. Frank Peckham and his wife Grace take a life estate in the remainder, with the privilege of disposing of or using any portion of the principal to the extent needed for their support and maintenance in a manner suited to their condition and circumstances in life; and that the children born to them take a vested interest in the remainder.

In this opinion the other judges concurred.