MOSES A. PENDLETON, ADMINISTRATOR, *vs.* HENRY LARRABEE, GUARDIAN, AND OTHERS.

New London Co., Oct. T., 1892. ANDREWS, C. J., CARPENTER, TORRANCE, F. B. HALL and THAYER, JS.

A testator, having no nearer relatives than his parents and *C*, the infant son of his deceased sister, gave *C* one hundred dollars, the interest to accumulate till he was twenty-one and thereafter to be paid to him yearly, and at his death the principal to go to his children, if he left any, and if none, then to fall back into the estate. Of the rest of his estate he gave a life use to his parents, with a right to use the principal if needed, and after their deaths whatever remained was to go to *C* "upon the same terms and conditions" as above, and after the death of the parents and of *C* whatever was undisposed of was to go to an uncle of the testator. By a codicil made eleven years later he gave to *C* four hundred dollars more, "upon the same condition and with the same directions" as the original bequest. *C* died at the age of twenty-one, leaving an infant daughter. The property of which the parents had the use was left at their deaths but little reduced. Held that the will must be construed as giving this property to the child of *C* and not to the uncle of the testator.

If a will will bear a construction in favor of the heir equally as well as in favor of a more distant relative, that construction is to be preferred.

[Argued October 18th—decided November 21st, 1892.]

SUIT for the construction of a will; brought to the Superior Court in New London County. The allegations of the complaint were found true and the case reserved for advice.

*D. G. Perkins*, for Lucretia P. Breed, daughter of Charles W. Breed, deceased.

*J. Halsey*, for the executor of Oliver B. Grant.

CARPENTER, J. On the 27th day of September, 1859, Orrin B. Safford made his will. On the 3d day of November, 1870, he made a codicil to it. On the 9th day of the same month he died, and his will and codicil were duly admitted to probate.

The material parts of the will are the second and third sections, as follows:—

"*Second.* I give and bequeath unto my nephew, Charles W. Breed, being the lawful child of my sister, Lucy Ann Breed, deceased, one hundred dollars, to be put into the Stonington Savings Bank, or some other well arranged savings bank in this state, and kept until he is twenty-one years of age; and after that time the interest on the amount then in the savings bank be paid to him yearly until his death, and then if he leaves a lawful child or children, it is my will that that child or children have it forever; but if Charles W. Breed leaves no lawful child or children, then the amount which was kept for him when twenty-one years of age returns back into my estate.

"*Third.* I give and bequeath unto my beloved father and mother, Orrin Safford and Ann M. Safford, the use of the rest and residue of my estate during their natural lives, and as much of the principal as they may need to make them comfortable, they being their own judges, using all if they think needful; and should any of the principal remain unused after their decease, it is my will that it be given to Charles W. Breed, upon the same conditions and upon the same terms as is made in the second section of this will; and after the death of my father and mother if any of my

estate remain undisposed of, I give and bequeath the rest and residue of my estate to my uncle, Oliver B. Grant, to him, his heirs and assigns forever."

The codicil is as follows:—" Whereas, by my last will and testament, dated September 27th, 1859, I gave to my nephew, Charles W. Breed, one hundred dollars, and am now desirous to give him more, I do hereby, by this present writing, which I declare to be a codicil to my said will, give and bequeath to my nephew, Charles W. Breed, the son of my deceased sister Lucy Ann Breed, four hundred dollars more, upon the same condition and with the same instructions and directions as is named in my said will in the second section in my bequest to him, the said Charles W. Breed."

Charles W. Breed died February 28th, 1892, leaving legitimate issue, Lucretia P. Breed, aged eight months. The father and mother of the testator died, Ann M. Safford on January 7th, 1875, aged sixty-seven years, and Orrin Safford on September 22d, 1875, aged sixty-eight years.

At the time of the making of the will and at the time of his death there were no brothers or sisters surviving the testator, nor any representatives of brothers or sisters except Charles W. Breed.

Oliver B. Grant, named as contingent legatee and executor in the will, died October 1st, 1891, aged eighty-six years, leaving the estate unsettled. The plaintiff was appointed administrator *de bonis non*, and has now settled the estate, with a balance of $5,591.57 for distribution. The executor of Oliver B. Grant claims this sum, and it is also claimed in behalf of the infant, Lucretia P. Breed. This suit is brought in order that it may be judicially determined to whom it rightfully belongs. The Superior Court found the allegations of the complaint to be true, and reserved the case for the advice of this court.

Obviously Lucretia P. Breed is next of kin and sole heir at law. If the statute of distributions was to apply she would take. There can be no presumption that the testator intended to disinherit his next of kin in favor of a more distant relative. On the contrary, whatever presumption

there is is in favor of the heir. If, therefore, the will will bear a construction in favor of the heir, equally as well as one in favor of a more distant relative, the former is to be preferred. The testator had in mind the probability that Charles W. Breed would leave children, and made some provision for such a contingency. Confessedly one hundred dollars, mentioned in the second section of the will, and four hundred dollars, mentioned in the codicil, with the interest, go to the child after the death of the father. Can it be possible that the testator intended that a much larger sum should ultimately go to his uncle rather than to this child?

Let us look with some care at the language of this will in the light of the circumstances, and, as far as possible, put ourselves in the place of the testator. He was then about twenty-five years of age. He had no brother or sister. His father and mother and a child of a deceased sister were his nearest relatives. They were the natural objects of his bounty. He made a small provision for his nephew, recognizing the possibility that he might live to have children of his own, and providing that such issue, if any, should take at his death, and in default of issue providing that the sum so given should " return back into his estate; " thus clearly contemplating the possibility, if not probability, that his nephew would die in childhood or while yet young. He then proceeded to make provision for the support of his parents, who at that time were about fifty-six and fifty-seven years of age respectively. This is by far the most prominent feature of the will. We find in it the primary and leading intent. His parents were authorized, if need be, to exhaust the entire estate. At their death the one first in his mind was not the uncle but the nephew, and the estate is given to him, not absolutely, but " upon the same conditions and upon the same terms " as the gift in the second section of the will. The will is crudely and inartificially drawn. The language is not the best that could have been employed. But we think the meaning is reasonably plain. " Upon the same conditions and terms " may fairly be said to embrace limitations and restrictions. The word " terms " certainly

may mean that this gift is given in the same way as that. That is a life estate in Charles, so is this. The enjoyment of that is postponed until he arrives at the age of twenty-one years, and so of this. He can only use the income of that, and that is true of this. The remainder of that is limited to the issue of Charles, if any, and we think it was the intention to limit the remainder of this in like manner to the same person or persons.

Eleven years later, when near his end, and when it was apparent that the provision for the support of his parents would not be materially impaired, his nephew being then eleven years old, he gave him an additional sum of four hundred dollars. In that bequest the language is—"upon the same condition and with the same instructions and directions as is named in my said will in the second section," etc. It is conceded that the remainder in that sum goes to the issue of Charles; and yet it seems to us that the language in the codicil is quite as indefinite as the language in the third section.

The counsel for Grant's executor lays stress on the circumstance that the gift to Grant is on the death of Charles and of the father and mother of the testator, without any reference to the issue or want of issue of Charles. There might have been weight in that claim were it not for what follows, namely, "if any of my estate remain undisposed of." This language is significant. In disposing of the property after the termination of the parents' life estate, the language is "and should any of the principal remain unused after their decease, it is my will," etc., which is appropriate language in that connection, because the parents had a right to use the principal if need be; but when he comes to dispose of the principal after the termination of the life estate of Charles, he gives to Grant only such portion as may remain undisposed of. Undisposed of by whom? Certainly not by Charles, for his interest was limited to the income. Certainly not by his parents, for he is dealing only with property remaining after their decease. He must therefore have meant property undisposed of by himself in his will. If

Charles had died leaving no issue, a then probable contingency, the remainder would have been undisposed of, and would have been intestate estate were it not for the gift to Grant.

We think it is reasonably certain that the testator intended that the property should go to the direct descendants of his father and mother, if there were descendants; if not, then, and then only, was it to go to his uncle.

The Superior Court is advised to render judgment in favor of Lucretia P. Breed.

In this opinion the other judges concurred.