THE ANSONIA NATIONAL BANK ET AL., TRUSTEES, *vs.*
GLADYS KUNKEL ET ALS.

Third Judicial District, New Haven, January Term, 1927.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

When the term "issue" is used in a will as a word of purchase, its primary and, therefore, presumptive meaning is heirs of the body and includes descendants in every degree; but if it appears, either from the will itself and the general scheme of distribution therein provided, or from the circumstances surrounding the testator, that he intended to use the term in its more restricted sense of children or grandchildren, it will be so construed.

Ansonia National Bank *v.* Kunkel.

It is presumed, unless the contrary appears, that a testator intended to dispose of his entire estate and to avoid intestacy as to any part of it.

If the word "issue" is used interchangeably with "children," and both apply to the same subject, it will be given that meaning.

Under § 4879 of the General Statutes, an adopted child "shall inherit estate from his adopting parents or their relatives the same as though it were the natural child of such adopting parents."

A construction which disinherits the testator's heirs at law is to be avoided unless a clear and strong expression of intent compels it; and, in cases of doubtful meaning, that construction which most nearly conforms to the statute of distributions will be adopted.

The legal presumption that a woman of any age is capable of bearing children has certain well-defined uses; but it cannot be invoked for the purpose of imputing to a practical-minded and intelligent testator the unreasonable and improbable belief that his sister, who was childless, had been married forty years and was sixty-one years old when he executed his will, might thereafter give birth to a child.

The testator provided that until the death of his two sisters, his residuary estate should be held in trust and the income distributed in three equal shares to these sisters and a niece, the share of any who died during the continuation of the trust to be paid to her issue; and that upon the termination of the trust, the principal should be divided "in three equal parts among the issue of my then deceased sisters . . . and my niece . . . if she be living, but to her issue if she be dead." When the will was executed, one of these sisters, then sixty-one years of age, had no children of her own blood, but did have an adopted daughter who for many years had been regarded as a member of the family and had always been, and continued thereafter to be, on the closest terms of intimacy and affection with the testator, who knew and approved of the adoption, acted as god-father at her baptism, and, by repeated visits at her home and frequent gifts to her and her children, exhibited unusual fondness for her. Upon the termination of the trust, the present action was instituted by the trustees for advice as to whether the adopted daughter was entitled to her mother's share in the fund. *Held:*

1. That the testator intended to use the word "issue" in its restricted sense of "children"; that the adopted daughter was the "issue" of the testator's sister within the meaning of the will; and that, therefore, she was entitled to one third of the principal of the fund and to one third of the income which had accumulated between the death of her mother and the termination of the trust.

2. That the counsel fees and expenses of the present action should be borne by the entire residuary estate.

Argued January 26th—decided March 5th, 1927.

SUIT by trustees under the will of John T. Kent, late of the town of Ansonia, deceased, for advice and direction in the administration of their trust, and to determine the respective rights of the defendants, brought to the Superior Court in New Haven County and tried to the court, *Ells. J.;* judgment rendered from which the several defendants appealed. *Error on appeal of Gladys Kunkel; no error on appeals of the other defendants.*

*Thomas F. Moore* and *Francis T. Reeves,* with whom, on the brief, was *David E. FitzGerald,* for the appellants (defendants Arthur Conklin *et als.*).

*Thomas M. Cullinan* and *John J. Cullinan, Jr.,* for the appellant (defendant Gladys Kunkel).

HAINES, J. The purpose of this action is to determine the proper interpretation of the fourteenth clause, subsection (b), of the will of John T. Kent, deceased, which reads as follows: "(b) To pay the net income of said trust quarterly in equal shares to my sisters, Annie Conklin and Nora Ford, and my niece, Catherine McCarthy, daughter of my deceased sister, Elizabeth Buckley, so long as my two sisters shall live. Upon the death of either of my said sisters or of said Catherine McCarthy, to pay the portion of the income of the one deceased to her issue, the children of any deceased issue to take per stirpes, until the death of the survivor of my two sisters, when said trust shall terminate. Upon the termination of the trust to divide the principal and any accumulation thereof, in three equal parts among the issue of my then deceased sis-

ters, Annie Conklin and Nora Ford, and my niece, Catherine McCarthy, if she be living, but to her issue, if she be dead, the children of any deceased issue to take the share of the parent, and the issue in each case to take per stirpes and not per capita. No beneficiary of said trust shall anticipate the payments of income or principal, nor shall any assignment of any interest in said trust be binding on the said trustees."

The plaintiffs seek answers to the following questions:

"First. Whether the trustees shall pay over to Gladys Kunkel, adopted daughter of Nora Ford, the one-third of the income of said trust, to wit, $983.27, accumulated in said trust from the date of the death of Nora Ford, to wit, May 3, 1925, to the date of the termination of the trust, to wit, the date of the death of Annie Conklin, July 6, 1925.

"Second. If said trustees should not pay said income to the defendant, Gladys Kunkel, to what person or persons the same should be paid.

"Third. Whether or not upon the death of Annie Conklin, and the termination of said trust, said Gladys Kunkel, adopted daughter of said Nora Ford, takes or should take one equal third part of said trust estate under the provisions of said fourteenth clause of said will.

"Fourth. If said Gladys Kunkel, as an adopted daughter of Nora Ford, does not take or should not take one-third equal part of said trust estate, then whether or not said equal third of said trust estate becomes intestate property and should pass as such to the heirs at law and next of kin of the testator, and if the same shall not become intestate estate of the testator, then to whom the same passes or should pass under the terms of the will of the said testator."

The testator, John T. Kent, made his will October

17th, 1923, and died January 21st, 1924. He left, as his only heirs and next of kin, Nora Ford, a sister, Annie Conklin, a sister, and two children of a deceased sister, Elizabeth Buckley, to wit, Catherine McCarthy and Helen Franket.

Nora Ford died intestate May 3d, 1925. Annie Conklin died intestate July 6th, 1925, and left eight children, to wit: Benjamin Conklin, Arthur Conklin, Dwight Conklin, John Conklin, Elnora Kellar, Carrie Patrick, Nellie Conklin and Ethel Conklin, and two grandchildren of a deceased son, Willis Conklin, to wit: Alice Conklin and Harold Conklin.

There are now no living brothers or sisters of John T. Kent, and no children of deceased brothers' or sisters save those above named. Nora Ford and Thomas J. Ford were married September 8th, 1884, and lived together till her death May 3d, 1925. It was the only marriage of Nora Ford, and no child was ever born to her. Thomas J. Ford, her husband, died November 3d, 1925. She adopted the defendant Gladys Kunkel, September 21st, 1899, who at all times thereafter till her own marriage, was known by the name of Gladys Ford.

The testator, John T. Kent, knew and approved of the adoption, and when Gladys was baptized in St. Augustine's Church in Bridgeport, he acted as godfather and sponsor for the child, and he knew at all times that no children were ever born to his sister Nora. When he made his will, this sister was sixty-one years old, and Gladys, her adopted daughter, was the wife of Charles F. Kunkel and had four children born to her, all of whom were living, and all these facts were likewise known to the testator. The testator was unmarried, and during the married life of his sister Nora, was accustomed to visit her two or three times a week and to spend the greater portion of his Sundays

and holidays at her home, taking his meals there, and Gladys was generally present at all these times. He attended the marriage of Gladys, October 23d, 1916, and gave a wedding gift. A short time after her marriage, Gladys returned to an apartment in the same house in which her mother Nora was living, which house was owned by the testator. This is the same real estate which, by the sixth paragraph of his will, he gave to his sister Nora for her life use, and devised it at her death to "her children living at her death, to be theirs absolutely and in fee simple." A certificate of devise to Gladys Kunkel was issued by the Court of Probate for the district of Ansonia. The testator was on affectionate terms with Gladys, and expressed a fondness for her, visited her frequently at her home and at the home of her mother Nora, always made Christmas presents to her and her husband and their children, and when she was operated upon in St. Vincent's Hospital, Bridgeport, April 19th, 1922, visited her there, and made a gift of money to her. He was mentally active, a business man and a manufacturer, and in good physical condition till two months before his death, when he became confined to his bed.

Aside from Gladys Kunkel, the appeals of the remaining defendants involve, in various ways, two main questions: Whether Gladys Kunkel was legally adopted, and whether the devise to the "issue" of Nora Ford, in the fourteenth clause of the will, made Gladys the beneficiary. Since the appeal was filed, however, the claims relating to the adoption have been withdrawn, leaving a single fundamental issue, viz., the proper interpretation of that portion of the fourteenth clause of the will which refers to Nora Ford and her "issue."

It is well established by numerous decisions, that the word "issue" in a testamentary disposition, may be

given its primary meaning of heirs of the body, and descendants in any degree, or a meaning synonymous with the word child as commonly used, according to circumstances.

It has become elementary that whether the word "issue" shall be given the one or the other meaning, depends upon the intent with which the testator used it, and this intent is to be deduced from the entire will, considered in the light of the circumstances presumed to be known to the testator at the time he executed the will. Thus, the general scheme of disposition of his estate is often discernible from a study of the whole will; and the reasonable probability or improbability that the testator meant to give the word its primary or other meaning is often determinable from the circumstances which then surrounded him. When the intent is thus disclosed, the word will be given that meaning which will most effectively carry out that intent, since this is the key-note of testamentary interpretation.

Where the intent is not otherwise clear, certain presumptions may be invoked. One of these is the natural one, that a testator will favor heirs of the blood, and thus, in the absence of a discoverable intent to the contrary, the word will be given its primary meaning. Another presumption is, that a testator designed by his will to dispose of his entire estate and avoid intestacy as to any part of it. *Wallace* v. *Wallace,* 103 Conn. 122, 134, 130 Atl. 116; *State* v. *Smith,* 52 Conn. 557, 563; *Warner* v. *Willard,* 54 Conn. 470, 472, 9 Atl. 36; *Peckham* v. *Lego,* 57 Conn. 553, 559, 19 Atl. 392; *Belfield* v. *Booth,* 63 Conn. 299, 305, 27 Atl. 585; *Burr* v. *Tierney,* 99 Conn. 647, 654, 122 Atl. 454. Though these presumptions all obtain in the absence of an intent otherwise clearly disclosed, they always

yield to a contrary intent when such intent is established.

Upon these general principles, we have recently stated the rule governing the interpretation of the word "issue," as follows: "The term 'issue,' in a will, is to be construed as a word of purchase, unless it appears from the context and surrounding circumstances to have been used as one of limitation. Its primary, and therefore presumptive, meaning, when used as a word of purchase, is heirs of the body, and includes descendants of every degree. But when the intention of the testator, as evinced by the context and surrounding circumstances, indicates that he used the word 'issue,' not in its larger significance, but in its more restricted sense, it will be construed so as to effectuate the testator's intent and to be synonymous with children or grandchildren." *Wallace* v. *Wallace,* 103 Conn. 122, 132, 130 Atl. 116; *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 344, 119 Atl. 218; *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33.

What then was the intent of John T. Kent in using this term in the fourteenth clause of his will? He says: "Upon the termination of the trust to divide the principal and any accumulation thereof, in three equal parts among the issue of my then deceased sisters, Annie Conklin and Nora Ford, and my niece, Catherine McCarthy, if she be living, but to her issue, if she be dead, the children of any deceased issue to take the share of the parent, and the issue in each case to take per stirpes and not per capita."

Turning to the fifth paragraph of the will, we find the testator gives a house in Waterbury to his sister Annie for life. He knew she then had children, and he provided that upon her death, this house should go to her "children." They were her "issue," but he did not use that word in describing them. By the four-

teenth clause, he gives Annie the use for life of one third the residue, and again having in mind the same children, gives this third to her "issue" upon the termination of the trust. Those who are first referred to as the "children" of the deceased, are later referred to as the "issue" of the deceased. Here is an instance where he used the words interchangeably. In such cases it has been uniformly held that the words were treated by the testator as synonymous. *Daskam* v. *Lockwood,* 103 Conn. 54, 59, 130. Atl. 92; *Wallace* v. *Wallace,* 103 Conn. 122, 133, 130 Atl. 116; *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 326, 130 Atl. 483. Since a word used once in a will with a certain meaning will be given the same meaning in all other parts till the contrary intent appears, we are entitled to read the fourteenth clause as though the testator had used the word "children" instead of "issue." *Wood* v. *Wood,* 63 Conn. 324, 328, 28 Atl. 520.

Recurring now to the statute of adoption, we find an adopted child is given the same legal status in this State that a natural child has. "And such child shall thereupon become the legal child of the person by whom it shall be so adopted, and he shall become its legal parent with all the rights and duties between them of a legitimate parent and child. Such child by virtue of such adoption shall inherit estate from its adopting parents or their relatives the same as though it were the natural child of such adopting parents." General Statutes, § 4879.

At this point it is necessary to bear in mind two rules of testamentary construction. One of these is that heirs at law are not to be disinherited unless the intent to do so is clear and strong. *Hughes* v. *Knowlton,* 37 Conn. 429, 432; *Peckham* v. *Lego,* 57 Conn. 553, 559, 19 Atl. 392; *Pendleton* v. *Larrabee,* 62 Conn. 393, 396, 26 Atl. 482.

Again, as an aid to construction where the meaning is in doubt, that construction will be adopted which most nearly conforms to the statute of distributions. *Hamilton* v. *Downs,* 33 Conn. 211, 214; *Lyon* v. *Acker,* 33 Conn. 222, 224, 225; *Geery* v. *Skelding,* 62 Conn. 499, 501, 27 Atl. 77; *Conklin* v. *Davis,* 63 Conn. 377, 381, 28 Atl. 537.

Under our statute Gladys, at the time the will was made, was the sole child and heir of Nora Ford, and upon her death intestate, would take her property under the statute of distributions, and the testator well knew this fact. So, we are brought to inquire whether there is a discoverable intent on the part of the testator to disinherit her. If such intent existed, we are obliged to believe that he thought his sister Nora, though sixty-one years of age and forty years married, might still give birth to a child. The established legal presumption that a woman of any age may give birth to a child, like other legal presumptions, has definitely limited uses. We are not concerned with the remote medical possibility. Our question is whether it is reasonable to suppose that John T. Kent *thought* she yet might have a child born to her. We say unhesitatingly, it is not a reasonable supposition. On the other hand, the facts found do create a probability of compelling force, that both John T. Kent and his sister Nora considered Gladys as in a true sense the daughter of the latter, and their mutual affection for her was obvious. She was the god-child of the testator, and he seems to have treated her, in every respect, as he would have treated a natural child of Nora's. He knew that if Nora died, Gladys would be her sole heir, and through her, his heir also. It is difficult to believe that, under these circumstances, he desired or intended to disinherit her. There is further evidence which we think points convincingly the other

way. He sought to divide this fund into "three equal parts" represented by the succession of his three sisters. This division was to be made *after* the death of Nora, when possibility of issue in that line was extinct. Yet he knew that this could not be done unless Nora had a child born to her. He was obviously too practical and intelligent to actually believe that this might happen. Why then the division, unless he had in mind that Gladys, as the child of Nora, would take one of the three shares? He knew that if this was not done, that third of his fund would be unprovided for and be intestate estate, yet he made no provision for such a situation.

Again, Gladys had been for twenty-four years the sole child and heir of Nora, and a loved member of the family. An intent on the part of the testator to exclude her from thus sharing in his estate, in the highly improbable event that it existed, would have called for some clear indication of it in his will, and we find none. Another consideration should not be overlooked. As we have seen, the testator, for some reason not appearing, did not intend Helen Franket, one of the two children of his deceased sister Elizabeth, to share his property in the substantial way in which he had provided for her sister Catherine. He gave a house and a third of his entire residue to the latter and but $500 to Helen Franket. Here again, it is highly improbable that he contemplated the intestacy of one third his residuary estate and the resulting inheritance by Helen Franket.

The outstanding scheme of the entire will, the very strong probabilities created by the circumstances, the presumption that both the statute of adoption and the statute of distributions were in the mind of the testator, the presumption that legal heirs are not to be disinherited, that intestacy is not intended, that in

case of doubt the construction will conform to the statute of distributions, the lack of any provision for excluding Gladys explicitly, the clear indication that the sharing by Helen Franket was not intended—all these and the other considerations we have touched upon, satisfy us that Gladys was intended by the testator by the language used in the fourteenth clause of the will.

We answer the first and third questions, "Yes," and this disposes of the second and fourth questions.

The defendant Gladys Kunkel appeals on the single ground that the trial court erred in holding that the allowance for fees and expenses of this litigation should be paid out of the one third part of the residue coming to her, rather than out of the entire residuum.

The statute provides that such fees and expenses shall be fixed by the court in its discretion and are "to be paid out of said estate." General Statutes, § 5813.

Two cases have been before this court involving this question. One was *Mallory* v. *Mallory,* 72 Conn. 494, 45 Atl. 164, where it was held that payment should be made out of the particular fund involved; and the other, *Beer* v. *Squires,* 102 Conn. 503, 129 Atl. 382, where the charge was made against the whole estate, conforming to the literal reading of the statute. The facts of the former case are such as to furnish little aid in the case at bar, but we may conclude that equitable principles controlled the decision, and should do so within the limits of the statute. The facts in the second case conform quite closely to those before us. The testator divided the residue into four equal parts, giving one to each of three of his four children and the fourth to trustees, the income to go to a supposedly unmarried daughter for her life if she remained unmarried, and at her death, the principal to be divided

among the other three children, but if she married, the principal to be hers forthwith. It was found that the last named daughter had secretly married long before the will was made, and was a married woman when the testator died. The action was brought to determine whether she was entitled to the principal of the fund. It will be seen that all these parties had a direct interest in the answer to this question, and we accordingly held that the charge should be made against the entire residuum, in which all were interested.

In the instant case, the action brought by the trustees for advice has resulted in a contest by the other heirs against Gladys Kunkel. They would all have been financially benefited by defeating her claims. The decision being in her favor, the defeated claimants equitably should not be allowed to pay the cost of their efforts out of her fund alone, but they should as far as possible share the burden. We therefore hold that the "estate" which should pay these charges, within the meaning of the statute, is the entire residuum.

There is error on the appeal of Gladys Kunkel, and no error on the appeals of the other defendants. No costs will be taxed in favor of any party in this court.

In this opinion the other judges concurred.