RUDOLPH C. CULVER ET AL. *vs.* UNION & NEW HAVEN TRUST COMPANY, EXECUTOR AND TRUSTEE.

EDWARD T. FRANKLIN *vs.* UNION & NEW HAVEN TRUST COMPANY, EXECUTOR AND TRUSTEE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued April 3d—decided June 4, 1935.

*Charles M. Lyman,* with whom was *Clarence W. Bronson,* for the appellants (James D. Culver *et al.*).

*George E. Beers* and *William L. Beers,* for the appellants (Rudolph C. Culver *et als.*).

*John D. Walker,* for the appellant (Edward T. Franklin).

*Alfred B. Aubrey,* for the appellees (Charles H. Tyler, administrator, *et al.*).

*Oswin H. D. Fowler,* for the appellees (Sarah E. Yale *et als.*).

*Frederick L. Perry,* for the appellees (George S. Cook *et al.*).

*J. Dwight Dana,* for the appellee (Union & New Haven Trust Company, executor and trustee).

*Russell C. Roberts,* for the appellee (Isabella M. Franklin).

HINMAN, J. Charles B. Yale died in Wallingford on January 5th, 1926, leaving a will which was admitted to probate, and subsequently the Union & New Haven Trust Company qualified as trustee under the will and has ever since acted as such. In his will the testator made several general bequests to public and

charitable purposes, provided for an annuity to Helen L. McIlreath, a first cousin, and a life use by her of his homestead, and made specific bequests to certain other relatives. The residuary clause, which is the one directly involved in these appeals, reads as follows: "Eighteenth. All the residue and remainder of my estate of every description and wheresoever situated, not bequeathed as aforesaid, is to be held by my trustee under this my Will, kept safely invested and allowed to accumulate during the lifetime of my said cousin, Helen McIlreath, or in case she shall not me survive, then for the period of five years after my decease, unless I otherwise direct by codicil hereto, and at the decease of said Helen McIlreath, or at the expiration of said five years as the case may be, said trust shall terminate, and thereupon said residue and remainder of my estate shall be distributed among my next of kin on both the paternal and maternal sides, including in the class of distributees both first and second cousins of myself, who shall be surviving at the termination of said residuary trust, to be theirs, their heirs and assigns absolutely, share and share alike, per capita and not per stirpes."

Helen L. McIlreath survived the testator and until June 7th, 1933. Thereafter the trustee filed its account, which was accepted, and the Court of Probate entered the decree from which these appeals were taken. By this it was ascertained and found that the first cousins, first cousins once removed and second cousins of the testator who were living on the date of the death of Helen L. McIlreath were entitled to share per capita as distributees, except Edward T. Franklin, a first cousin once removed, being the son of Isabelle M. Franklin, a first cousin now living, and Charles H. Tyler, the son of William H. Tyler, a first cousin once removed then living. The decree listed by name the

persons held entitled to take as belonging to each of the classes included and ordered a division between the persons so listed in equal shares, per capita.

Isabelle M. Franklin, the only living first cousin, is a daughter of the testator's maternal uncle. The persons classed and named in the decree as "first cousins once removed" are all great-grandchildren of the grandparents or grandchildren of the great-grand-parents of the testator. Those classed and named as "second cousins" are all great-grandchildren of the great-grandparents of the testator. Rudolph C. Culver and the other appellants in the Culver appeal are great-great-grandchildren of the great-grandparents of the testator. They were excluded from the distribution as beyond the degree of second cousins to the testator, being second cousins once removed, but claim on their appeal that they are entitled to share in the class designated by the will as second cousins of the testator. They also assert by additional reasons of appeal that the Court of Probate was without jurisdiction to construe the will to the extent required in order to determine the distributees. Edward T. Franklin, the appellant in the Franklin appeal, is within the class of first cousins once removed, but was omitted from the takers in that class because his mother, Isabelle M. Franklin, is still living and was held to be "next of kin" to the testator in her line to the exclusion of her son, who is one degree further removed. The questions reserved in the Culver appeal are: (a) Did the Court of Probate have jurisdiction to pass the order and decree from which the appeal was taken? (b) If it had jurisdiction to pass said order and decree, did it err in passing it, and (c) If it erred therein, what classes of relatives of the testator are entitled to share in the distribution of his residuary estate, and are children and grandchildren of living persons entitled

to take along with their living ancestors? The questions in the Franklin case are similar in substance to questions (b) and (c) above stated, answers to which will be determinative of both appeals.

The contention of the Culver appellants with relation to question (a) is that the Court of Probate was without jurisdiction to make such construction of the will of the testator as was involved in determination of the distributees under article eighteenth thereof, but that, instead, distribution should have been postponed until a construction had been obtained in an action brought to the Superior Court for that purpose. While distribution might have been deferred until a construction of the will had been had through an action specifically adapted thereto, Courts of Probate have full and exclusive jurisdiction of the settlement of estates, including the power and duty to ascertain the distributees of a testate estate "so far as the will may leave the same indefinite and necessary to be defined." General Statutes, § 4977. "Whenever in such settlement a judgment becomes necessary upon a controversy which is plainly within the jurisdiction conferred by statute, involving the consideration of title or other matter which *per se* is without that jurisdiction, . . . the court has power to consider that question, so far as may be necessary to render its judgment," although "an adjudication where the court may incidentally consider such question must be in respect to a matter clearly within its statutory jurisdiction and which the court is required by law to determine, and the question . . . must be so involved that the necessary adjudication cannot be had without considering it." *Mack's Appeal,* 71 Conn. 122, 130, 131, 41 Atl. 242. In performing its duty of ascertaining distributees "the Court of Probate has jurisdiction to determine such incidental questions as are necessary

to a correct conclusion." *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 376, 167 Atl. 808.

The application of this principle to orders for distribution is illustrated in *Davenport* v. *Richards,* 16 Conn. 310—ascertainment of heirs held so involved—as was the validity of a legacy in *Tappan's Appeal,* 52 Conn. 412, and in *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 600, 98 Atl. 129. In *Bell* v. *Raymond,* 20 Conn. 337, the meaning of a will was incidental to an adjudication upon the sale of land to pay a legacy. In *Chamberlin's Appeal,* 70 Conn. 363, 378, 39 Atl. 734, the validity of a legacy was involved in determination of an application for the appointment of an administrator *de bonis non,* and in distribution in *Treat's Appeal,* 30 Conn. 113. In *Dickerman* v. *Alling,* 83 Conn. 342, 76 Atl. 362, and *Strong* v. *Elliott,* 84 Conn. 665, 81 Atl. 1020, construction of wills was involved in decrees of distribution. See also *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 161, 147 Atl. 562; Cleaveland, Hewitt and Clark, Connecticut Probate Law and Practice, pp. 129, 143, 497. Upon an appeal from an order of a Court of Probate to the Superior Court, even though the latter has no greater latitude of power than the former in that particular proceeding (*Wilson* v. *Warner,* 84 Conn. 560, 564, 80 Atl. 718), as a practical proposition a question of construction, admissible as incidental to the order, is determined by or through the very tribunal to which a construction suit would be brought. We regard construction of the will of the testator, to the extent that it was construed by the Court of Probate, as so incidental and necessary to a conclusion as to the distributees as to be within its jurisdiction.

The identity and scope of the distributees entitled to share in the residue of the estate depend largely

upon the intent attributable to the testator through the direction, in the eighteenth paragraph of his will, that the residuary estate "shall be distributed among my next of kin on both the paternal and maternal sides, including in the class of distributees both first and second cousins of myself, who shall be surviving at the termination of [the] residuary trust, . . . share and share alike, per capita and not per stirpes." The principal claimed ambiguity therein relates to the extent to which "cousins" are intended to be included as distributees. In a gift to a class we are to look to the description and inquire what individuals answer to it, and those who do are the legatees described. *Moffett* v. *Elmendorf*, 152 N. Y. 475, 46 N. E. 845. Primarily and specifically the term "cousin," without more, means the son or daughter of one's uncle or aunt (called more fully own, first, or full, cousin, or cousin-german). In its usual and ordinary acceptation it does not connote second or third cousins. The children of first cousins are second cousins to each other; the children of one's first cousins are sometimes popularly called his second cousins but are, more properly, his "first cousins once removed." Webster's New International Dictionary (2d Ed.) p. 612; 15 C. J. p. 1185; *In re O'Mara*, 106 N. J. Eq. 311, 322, 151 Atl. 67, 72; *In re Bonner*, L. R. 19 Ch. D. 201, 205; *People* v. *Clark*, 16 N. Y. Sup. 473. In the absence of contrary context, it is to be assumed that a testator used these terms in the ordinary and popular sense. *Walker* v. *Chambers*, 85 N. J. Eq. 376, 96 Atl. 359. "Usage makes language, and . . . the intent of those who make wills will obviously best be found by giving it the popular and generally understood meaning." *Hartford-Connecticut Trust Co.* v. *Lawrence*, 106 Conn. 178, 183, 138 Atl. 159.

For this reason, unless the context or facts and

surrounding circumstances indicate a different meaning, the testator is to be regarded as intending the distributees to be determined according to the common usage and understanding of what constitutes first and second cousins, rather than with reference to and according to the methods of computation by degrees of consanguinity, applicable to title by descent, which, by the civil law, is "to begin at either of the persons in question, and count up to the common ancestor, and then downwards to the other person, calling it a degree for each person, both ascending and descending, and the number of degrees they are distant from each other is the degree in which they stand related." 1 Swift's Digest, s. p. 114. The Culver appellants are children of second cousins, i. e. second cousins once removed. They cannot be regarded as, in any admissible sense, second cousins. If we were to carry forward, by analogy, the occasional designation of children of first cousins as second cousins, the children of second cousins would be or would be called third cousins. *People* v. *Clark,* supra, p. 474. The will affords no warrant for including third cousins as distributees. This the Culver appellants concede, but rely upon the contention, based on computation by degrees, that as the children of second cousins are of the seventh degree from the testator and, therefore, one degree nearer than third cousins, who are in the eighth degree, they should be admitted as distributees. For the reasons already stated we are unable to accede to that claim; we read the will as intending that distribution should extend no further than second cousins in the common conception of that term, which covers only those who are such in fact and, at most, first cousins once removed.

All of the parties appearing in and arguing this appeal concede, correctly, that the children, living on

June 7th, 1933, of those first cousins of the testator who had deceased before that date were properly included among the distributees. They were first cousins once removed—relatives who, as already noted, have often been called second cousins. The will indicates, in another paragraph (sixteenth), that the testator so regarded those standing in that relationship to him; he therein refers to Ada Sheldon Martin, who was in fact his first cousin once removed, as "my second cousin." The situation is similar in principle to that in *Wilks* v. *Bannister*, L. R. 30 Ch. D. 512, 518, in which a gift, to "such . . . first and second cousins" as survived the testator's wife and sister, was stated to be "in addition to any sums which they may be entitled to under my will," having necessary reference to bequests to first cousins once removed, and the testator having no second cousins, and it was held that he meant by "second cousins" such first cousins once removed. In *In re Bonner*, supra, where, also, the testator had no second cousins, but first cousins once removed, it was held that on fair consideration of the will with reference to the facts the latter would take a bequest to "second cousins." In *Campbell's Appeal*, 64 Conn. 277, 278, 29 Atl. 494, the appellant, a son of a deceased first cousin of the intestate, is referred to as "a second cousin of the deceased."

The appellant in the Franklin case included in his reasons of appeal a claim that the persons named in the decree under the title "second cousins," being all great-grandchildren of great-grandparents of the testator, were not entitled to share in the distribution, principally on the ground, as appears from his brief, that they, being, by computation under the civil law, in the sixth degree, are more remotely related to the testator than children of first cousins (fifth degree) of which the appellant is one. However, the stipulation

joined in by him includes the statement that the Court of Probate correctly found that those persons were second cousins of the testator. Therefore we are not called upon to decide whether, technically or in fact, great-grandchildren of great-grandparents of the testator—grandchildren of great uncles and aunts—are to be regarded as second cousins to each other. As already stated, we construe this will as intending to include second cousins in fact as well as first cousins once removed.

The principal claim of Franklin is that he is entitled to participate in the distribution as a first cousin once removed. This would obviously be so but for the provision to the effect that distribution of the residue should be confined to the testator's "next of kin." The term "next of kin" as used in the law may mean either, first, the nearest blood relatives according to the law of consanguinity, or, second, those entitled to take under the statutory distribution of intestate estates. *Close* v. *Benham,* 97 Conn. 102, 104, 115 Atl. 626. The English rule is that, there being no contrary intention indicated in the will, the next of kin are determined without reference to the statute of distribution and the expression is to be taken as referring to the "nearest blood relatives standing in equal degree to the testator." 2 Alexander, Commentaries on Wills, § 853. In *Swasey* v. *Jaques,* 144 Mass. 135, 138, 14 N. E. 758, it is held that primarily and in the absence of anything which modifies the meaning it indicates "the nearest degree of consanguinity." In Schouler on Wills, Vol. 2, § 880, it is stated that in case of doubt a construction which conforms most nearly to the general statutes of descent and distribution should prevail; citing *Pendleton* v. *Larrabee,* 62 Conn. 393, 26 Atl. 482. We have held, however, that in the absence of qualifying words it is to be construed as

intending "to include those who fall within the designation in the general speech and understanding of men, rather than in [the] primary and original sense, as the nearest in blood." *Close* v. *Benham,* supra, p. 106. In the will we are now considering there are provisions which preclude a construction according strictly to the rule of the "nearest of blood standing in equal degree" as distribution is directed to "both first and second cousins" "on both the paternal and maternal sides." Neither can it accord strictly with our statute of distribution (General Statutes, § 4982) which admits no representatives of collaterals after the representatives of brothers and sisters. *Daniels* v. *Daniels,* 115 Conn. 239, 242, 161 Atl. 94. The insertion in the will of the limitation to "next of kin" cannot be ignored, as it would be if both this appellant and his mother, Isabelle M. Franklin, were admitted as distributees. Furthermore, "a construction which admits children to compete with their living parents is to be avoided, unless such was plainly the testator's intention." *Daskam* v. *Lockwood,* 103 Conn. 54, 63, 130 Atl. 92; *Manning* v. *Manning,* 229 Mass. 527, 118 N. E. 676. The only construction which will give effect to all of the provisions contained in this paragraph of the will is as expressing an intent that the person or persons nearest in blood to the testator, but not more remote than second cousin, in each of the lines of consanguinity on both paternal and maternal sides should share, per capita, in the distribution. This, as to the line in which this appellant is, entitles his mother, and disentitles him, to participate in the distribution thereby directed, and the Court of Probate was correct in so deciding.

To question (a) in the Culver case (Did the Court of Probate have jurisdiction to pass the order and decree?) our answer is Yes; to (b) (Did it err in pass-

ing it?) we answer No; as question (c) is predicated upon a finding of error under (b) no answer thereto is required. In the Franklin case our answer to question (a) is No; no answer to question (b) is required.

No costs will be taxed in this court.

In this opinion MALTBIE, C. J., BANKS and AVERY, Js., concurred.

HAINES, J. (dissenting). In my judgment the result reached by the majority opinion does not effectuate the intent of the testator as to the distribution of his residuary estate. He directed that his "next of kin . . . including both first and second cousins of myself who shall be surviving at the termination of the residuary trust" should receive the fund, sharing equally and per capita. The term "next of kin" was manifestly used in its colloquial or popular rather than the strictly legal sense, since the latter would only include his one surviving cousin and he expressly included second cousins. The main question is involved in the terms "first and second cousins of myself."

At the time the will was made the testator had two living first cousins, Helen L. McIlreath and Isabelle M. Franklin. To the latter he gave $5000 outright, and to the former he gave his furniture and household chattels absolutely, the use for life of his homestead, and an annuity of $4000 per year and as much as $2000 more if needed. He made outright gifts of various sums to several persons by name, amounting in the aggregate to $30,500; all of these were children of his cousins. He created a residuary fund to be allowed to accumulate during the life of Helen L. McIlreath and to be distributed at her death. To this point the will indicates no interest on the part of the

testator, in any other relatives or class of relatives. The objects of his bounty were confined to his cousins and the children of his deceased cousins. One of the children of a cousin is designated by the testator himself, in the sixteenth paragraph of his will, as "my second cousin." Herein is a key to his intent. Obviously it was the view of the testator that children of his cousins were his "second cousins." This, moreover, is the meaning attached to that term in popular usage. Funk & Wagnalls New Standard Dictionary; 15 C. J. 1186; Century Dictionary; Webster's New International Dictionary. An illustration of this popular use may be found in our own reports. *Campbell's Appeal,* 64 Conn. 277, 29 Atl. 494.

If the technical legal meaning of the term does not accord with the meaning the testator intended it to have, we are in duty bound to give it the latter meaning. In the absence of anything showing a different intent, we assume a testator uses terms in their legal sense, but "this presumption will be overthrown when an examination of the instrument, in the light of the surrounding circumstances, clearly shows that the intent of the testator will not be effectuated by so interpreting it, and that the language was used in another sense. In such case that meaning will be attached to the language which the testator attached to it when he used it." *Wolfe* v. *Hatheway,* 81 Conn. 181, 184, 185, 70 Atl. 645; *Gold* v. *Judson,* 21 Conn. 616, 625; *Gerard* v. *Ives,* 78 Conn. 485, 489, 62 Atl. 607; *Hartford-Connecticut Trust Co.* v. *Lawrence,* 106 Conn. 178, 182, 135 Atl. 159; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 158 Atl. 224. The majority opinion accords to the term "next of kin" its popular and colloquial meaning since it holds that the distributees are not only the surviving first cousin but also those of a succeeding generation. Yet

it gives the term "first and second cousins" its technical legal meaning, thus bringing into the distribution thirty-two persons of whom fourteen are the children of the cousins of the testator's uncles and aunts and one is the testator's father's cousin of the half blood. In my judgment the testator used both the terms "next of kin" and "first and second cousins" in the popular sense which would be expected from a layman, meaning by the latter his surviving cousin Isabelle M. Franklin and the surviving children of his cousins, that is, a surviving child and surviving grandchildren of the testator's uncles and aunts. The other provisions of the will show clearly that he had these two classes of relatives in mind in bestowing his gifts, and in describing one of the latter he showed unmistakably that he considered such to be his "second cousins." The question involved is closely analogous in principle to that discussed in *Hartford-Connecticut Trust Co.* v. *Lawrence,* supra.