## CHARLES F. MACK'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, June Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It has always been the practice of courts of probate in this State, in ordering the distribution of the estates of deceased persons, to ascertain the heirs and distributees; and § 628 of the General Statutes, which requires such ascertainment, simply declares the preexisting law and confers no new power or jurisdiction. Such determination remains, as before, a mere incident of the order of distribution, and is not, of itself and independent of such order, a judicial act by which a party can be aggrieved.

Upon an application to a Court of Probate for the distribution, as intestate estate, of property formally bequeathed by will, the court must incidentally pass upon the validity of the bequest; although its judgment is conclusive only upon the question of distribution. But upon appeal to the Superior Court from a denial of such application, that court has full jurisdiction of the whole subject-matter, and may base its action upon an authoritative determination of the validity of the bequest; the ordinary course, however, is to refuse to consider the question of title any further than the Court of Probate might, i. e. for determining the propriety of granting or refusing distribution at that time.

Whether such judgment of the Superior Court would or would not operate as a technical bar to a subsequent action brought to directly test the title, quære.

A testator gave the remainder of his estate to a corporation in trust, to apply a portion thereof, not exceeding a sum named, to the erection of a church upon his land, for the use of the Evangelical Lutheran Church, and to apply the income from the rest of the property to the support of a pastor and the maintenance of said church, paying

over said income in such manner as the trustee might deem expedient for that purpose.  *Held* that the charitable trust created by these provisions was not void for uncertainty, and that upon the declination of the trustee named the Court of Probate might properly appoint another to execute the trust.

Submitted on briefs June 7th — decided October 5th, 1898.

APPEAL from an order and decree of the Court of Probate for the district of Stamford, upon an application to ascertain the heirs at law and distributees of the estate of Charles F. A. Mack, of Stamford, deceased, taken to the Superior Court in Fairfield County and reserved by that court, *Thayer, J.*, upon an agreed statement of facts, for the consideration and advice of this court.

The case is sufficiently stated in the opinion.

*Edwin L. Scofield*, for Charles F. Mack et al.

The Court of Probate had jurisdiction to adjudicate upon the validity of the provisions of this will.  The power to distribute the intestate estate, if any there was, resided in that court, and in that court alone.  The prayer of the petition and the manifest purpose of the proceeding, was to effect a distribution of that part of the estate which was claimed to be intestate because of the alleged invalidity of the twenty-first clause of the will.  The question of the validity of this clause of the will is not the main, direct and primary question raised by the application.  While it becomes an important consideration, it is but incidentally and indirectly involved in the main question, which is : Is there any estate for distribution, and if so, who are the distributees of it?  Of this latter question the Court of Probate has undoubted jurisdiction, and in the exercise of this jurisdiction it had power to inquire into the validity of the provision of the will in question.  *Chamberlin's Appeal*, 70 Conn. 378 ; *Tappan's Appeal*, 52 id. 412 ; *Strong's Appeal*, 68 id. 527.  The appeal from the order and decree of the Court of Probate brought before the Superior Court all of the questions raised by the petition, and the appellate court had jurisdiction to try the cause *de novo*.  On all of the questions raised by the

petition, save possibly the one as to who were the heirs of the testator, the action of the court was adverse to the claims of the petitioner. The court held that the petitioner was not a distributee of the estate described in the petition, because said estate was not intestate. This action of the court constituted the grievance on which the appeal was based, and the motion for the appeal is sufficiently broad to confer upon the appellate court jurisdiction of all of the questions presented on the petition to the Court of Probate. *Denslow* **v.** *Moore,* 2 Day, 12.

*Nichols C. Downs,* for William J. Berges, trustee.

The Court of Probate had no jurisdiction to determine the validity of the provisions of the will. *Chamberlin's Appeal,* 70 Conn. 363. The statute (§ 628) refers to estate which is intestate in the ordinary sense, *i. e.,* not devised or bequeathed, nor attempted to be devised or bequeathed. It does not refer to such estate as may be found or decided by a Court of Probate, after extended research into the labyrinth of intricate and conflicting legal maxims, rules and principles, to be intestate by reason of the illegality of the method employed by the testator to vest the title in the object of his bounty. If we attempt to adopt the latter construction, then the adjudication becomes a trial of title to real or personal estate, and the argument runs counter to numerous decisions of this court which state that the determination of such questions is not committed to courts of probate. It is said in *Chamberlin's Appeal, supra,* that courts of probate can only pass upon such questions incidentally. Is it not apparent that an adjudication upon the validity of the provisions of the will in question was not an incidental feature of the case? If presented at all, this was certainly the paramount issue in the case, and one to which the mere act of naming the distributees was notably subordinate and comparatively unimportant. It may be suggested that unless the appellant is permitted to test the validity of the provisions of the will in this form of proceeding, he will be without remedy. But it is not so. *Greene* **v.** *Dennis,* 6 Conn. 292; *Dickinson* **v.** *Hayes,* 31 id.

417; *Treat* v. *Treat*, 35 id. 210; *Colt* v. *Colt*, 32 id. 451; *Goodwin* v. *Chaffee*, 4 id. 163; *Knapp* v. *Hanford*, 6 id. 170. The Court of Probate did in effect comply with the prayer of the application. When the court named the heirs at law, it named those who would be distributees of intestate estate, if any there was. The heirs at law and distributees were necessarily the same persons. Again, the court might have designated such persons as "distributees of the intestate estate of said deceased," without deciding that there actually was any intestate estate, and the appellant's contention relative to the twenty-first clause of the will would have remained unnoticed by the court, and still he would not be aggrieved by the court's decision. If this position is sound, it follows that the validity of said twenty-first clause is not a question in the case as now before this court. *Hewitt's Appeal*, 53 Conn. 24; *Dickinson* v. *Hayes*, *supra*. But if the Court of Probate had jurisdiction to pass upon these questions at all, its decision was not final or conclusive, and a person cannot be said to be aggrieved except by a final judgment.

*Nathaniel R. Hart* and *John E. Keeler*, for Catherine A. Mack, administratrix.

*Julius B. Curtis* and *Louis J. Curtis*, for the St. Marcus German Evangelical Lutheran Church.

HAMERSLEY, J. The will in question was admitted to probate in 1892. The executors having declined to serve, an administratrix with the will annexed was appointed, who settled the estate and rendered her administration account, which showed a balance in her hands consisting of land on Franklin street in Stamford valued at $4,000, and personal estate valued at $12,813.95. This land and residue was devised and bequeathed in trust by the 17th, 20th and 21st clauses of the will.* In 1893, the appellant, a nephew of

---

* *Seventeenth,* I give and devise to my executors and to their successors, my real estate, including the buildings thereon, situated on Franklin street in said Stamford, in trust, nevertheless to hold the same as a place of habitation free of charge, for my said nephew and nieces jointly

the testator and one of the *cestui que trust* under the will, filed in the Court of Probate an application claiming that

during the term of their natural lives, or so long as they and each of them shall be and remain single and unmarried, and it is my will that if at any time hereafter my said nephew or any of my said nieces shall marry, such use shall thereupon cease so far as such one or ones as shall be married are concerned, but the same shall be enjoyed jointly by such of them as shall remain single and unmarried, and it is my further will and desire that should the wife or husband of such of my said nephew or nieces as shall marry, die leaving them or surviving them, such nephew or nieces shall thereupon be entitled to the use of said premises jointly with the others, in the same manner as if they had never married, and further in case none of my said nieces or my said nephew shall have remained single and unmarried, or neither of them shall have become widows before the last of my said nieces and my said nephew shall have married, then it is my will, and I hereby give my said executors and their successors the power, in their discretion to continue said use for the benefit of my niece last married or any or all of my said nieces, for the purpose of preventing at all times the invalidation of any policy or policies of insurance now covering or to hereafter cover the buildings upon said real estate, giving to my said executors and to their successors the right to extend and continue such use during the life time of such of my nieces as they (my said executors) may see fit, but upon the death of any of them, said use shall thereupon at once and forever cease, so far as her or their respective husband or husbands are concerned, and in case my said nephew or either or any of my said nieces or all of them, shall take any steps towards the invalidating of this my last [will] and testament, or shall appeal from or in any way oppose any of the acts of my said executors or their successors in the administration of my estate as herein provided, then I hereby give to my said executors and their successors the power to discontinue such use of my said real estate as is herein given so far as such one or ones as shall in any way oppose or appeal from the administration of my estate, are concerned, and my said executors and their successors shall also have the power, at any time thereafter in their discretion, to renew such use in the same manner as if such use had never been discontinued.

*Twentieth,* All the rest, residue and remainder of my estate of whatever kind and wheresoever situated, I hereby give to my said executors and their successors, so as to vest in them the legal estate, but to hold the same in trust, nevertheless, for the following purposes and uses, to wit: to invest the sum of fifteen hundred (1,500) dollars in such manner and upon such security as they may deem best, and to apply the income derived therefrom, or so much thereof as may be necessary, and if necessary, at their discretion any or all of the principal sum, towards the payment of all legal taxes levied on my said real estate on Franklin

the gift in trust was void; that the estate in the hands of the administratrix was intestate estate; and asked the court

street aforesaid, and for the continuing of any fire insurance on said buildings, and for such repairs to said buildings, as may from time to time be necessary, and also to keep the entire legal estate from encumbrances of record during the natural life of my said nephew or any of my said nieces, and upon the death of my said nephew and all of my said nieces, it shall be the duty of my said executors or their successors, to transfer said sum or so much thereof as shall then remain, to the Evangelical Lutheran Seminary of Gettysburg, Pa., for the use and purpose hereinafter directed.

To invest the balance of said rest, residue and remainder of my estate in such manner as in the opinion of my said executors shall seem best, until the same with the accumulation of interest shall amount to fourteen thousand (14,000) dollars, and thereafter to apply the income thereof, one half annually in equal shares to the use of my said nephew Charles F. Mack and my said nieces Christine C. Schaalman, Catherine A. Mack and Emilie C. Schmitt, or such of them as shall then be living, during their natural life, and one half annually in equal shares to the use of my said nieces Dorothea W. Mack, Anna B. Mack and Effie J. Mack, or such of them as shall then be living, and in the event of the marriage of my said nephew or either of my said nieces, his or her share of said income shall be paid to him or her, for his or her sole and separate use, and in the event of the death of my said nephew or any of my said nieces, the share of such deceased shall be divided among the survivors in equal shares per capita.

*Twenty-first,* Upon the death of my said nephew and all of my said nieces, I direct my said executors or their successors to transfer all my estate, both real and personal and wheresoever situated, to the Evangelical Lutheran Seminary of Gettysburg, Penn., and to its successors forever, in trust, to apply a portion thereof, not exceeding the sum of fourteen thousand (14,000) dollars, towards the erection and completion of a church of brick or stone upon my said real estate on Franklin street in said Stamford, for the use of the Evangelical Lutheran Church, and to apply the income of the remainder thereof towards the support of a pastor therefor, and the maintenance of said church, paying over said income in such manner as said Evangelical Lutheran Seminary of Gettysburg, Pa., may deem expedient for such purposes, and I make this bequest and devise upon the express condition that religious services held in said church in said Stamford shall be mainly conducted in the German language, and also upon the condition there shall be placed over the main entrance to said church a marble slab or tablet, on which shall be conspicuously inscribed, in memory of my mother, the following words: " In memoriam Lucie Christine Elizabeth Mack."

" to ascertain who are the heirs of said deceased, and distributees of said estate."

This application was improper; if there was any estate to distribute, the appellant should have applied for an order of distribution. The ascertainment of heirs and distributees is not, in itself and independent of distribution, a judicial act.

In 1699 an Act was passed prescribing the mode of distribution of intestate estate, and providing for the appointment of three freeholders to make the division. In 1812 a statute was passed authorizing the Court of Probate to distribute real estate devised by will to two or more persons, when the will made no provision for the division; and in 1865 a statute provided for the distribution of personal estate bequeathed to two or more persons. Under these statutes it has been the practice of probate courts to ascertain the heirs and distributees for the purpose of distribution; to order the distribution of intestate estates, and of testate estates in the case of joint devisees and legatees; and when the estate is all in cash, or there is but a single distributee, to order the executor or administrator to hand over the estate without distribution. And this practice has been held lawful. *Pinney* v. *Bissell,* 7 Conn. 21; *Davenport* y. *Richards,* 16 id. *310, 316–318.

In 1885 there was a special revision of the probate law, by which, however, the law of distribution remains substantially unchanged. The following section was added: " Sec. 197. It shall be the duty of the Court of Probate to ascertain the heirs and distributees of every intestate estate and of every testate estate so far as the will may leave the same indefinite and necessary to be defined, and in case there shall be but a single heir to whom the entire estate would descend, or in case such estate shall consist wholly of cash, such court shall order the administrator to deliver possession of, or to pay over the same, to said heir or heirs." Public Acts of 1885, p. 514.

The duty here described has always been the duty of the Court of Probate. The section simply recites the preëxisting law as settled in *Davenport* v. *Richards.* It confers no new

power or jurisdiction. The ascertainment of the heirs remains as it was before, a mere incident of the order of distribution, or the order to hand over the estate without distribution. We have never had before us an appeal from the action of a Court of Probate in ascertaining heirs, except once. That case was a reservation; the order appealed from was in effect a denial of distribution; no question was made by the parties as to the form, but on the contrary they stipulated that it should be so treated. Here the question is raised, and should be decided. We think that § 197 of the Act of 1885 (General Statutes, § 628), does not alter the law; that the ascertainment of heirs and distributees is involved in the judicial act of distribution, and that no one can be aggrieved until the order of distribution is made or denied.

The appellant, however, claims that notwithstanding the form of his application, the order appealed from is a denial of distribution. The order was passed more than three years after the application was filed. It finds the heirs and distributees of the deceased to be the persons claimed by the appellant; that the trusts created by the will are valid; that the whole estate is disposed of by the will, and that there is no estate for distribution to these heirs. The appellant appeals from the whole order. His appeal is certainly not from the ascertainment of the heirs, for that he admits is correct; it must be from the other parts of the order. This appeal is clearly defective, perhaps fatally so; but the appellees have not moved to dismiss nor in any way raised objections to its form, and for the purposes of this reservation we may treat it as an appeal from the denial of distribution.

Reversal of the probate order is asked for on the ground that the trust bequest is void, and therefore there is intestate estate which the appellant is entitled to have distributed. This raises the question, can a Court of Probate pass judicially on the validity of a legacy? Courts of Probate do not possess the right to try and finally determine disputed titles to property. *Gold's Case*, Kirby, 100; *Hewitt's Appeal*, 53 Conn. 24; *Mallory's Appeal*, 62 id. 218; *Homer's Appeal*, 35 id. 113; *Cone's Appeal*, 68 id. 84; *Chamberlin's Appeal*, 70

id. 363, 377. On the other hand, they have full and exclusive jurisdiction of the settlement of estates; and whenever in such settlement a judgment becomes necessary upon a controversy which is plainly within the jurisdiction conferred by statute, involving the consideration of title or other matter which *per se* is without that jurisdiction, it is clear that the court has power to consider such question, so far as may be necessary to render its judgment. This power is unavoidably implied in conferring the exclusive jurisdiction; and its exercise is not the exercise of the common-law power of a court of general jurisdiction, but is an exercise of the statutory jurisdiction conferred. The same principle was applied when we held that the ascertainment of the heirs of an intestate was involved in the judgment establishing a distribution, and that the power to order an administrator to turn over the estate to a single heir without distribution, was involved in the judgments necessary to the settlement of an estate, *Davenport* v. *Richards, supra;* when we held that the adjudication upon an administration account involved the validity of a debt whose payment was charged in the account, *Edmond* v. *Canfield*, 8 Conn. 87, 88; when we held that the meaning of a Will may be involved in an adjudication upon the sale of land to pay a legacy, *Bell* v. *Raymond*, 20 Conn. 337; and that the validity of a legacy may be involved in the adjudication of an application to distribute intestate estate. *Tappan's Appeal*, 52 Conn. 412. The question under discussion, however, was not raised in either of the two cases last cited, and they are not conclusive on the point. Again, the principle was applied when we held that denial of distribution involved the effect of a foreign judgment and the question of an equitable conversion of real into personal estate, *Clarke's Appeal*, 70 Conn. 195; and when we held that the validity of a legacy may be considered in determining whether there is a *prima facie* reason for the appointment of an administrator *de bonis non*. *Chamberlin's Appeal*, 70 Conn. 363.

It is evident that the question, what is an exercise of the common-law power of determining title, as distinguished

from an incidental consideration of a question of title neces-
sary to an adjudication under the statutory power of settling
an estate, may sometimes be difficult of answer.  It is hardly
wise to attempt the statement of a general rule ; the line of
demarcation can best be made clear through cases that test
its application.   This much, however, may be safely said :
the trial of title is without the jurisdiction of the Court of
Probate, and an adjudication where the court may inciden-
tally consider such question must be in respect to a matter
clearly within its statutory jurisdiction and which the court
is required by law to determine, and the question of title
must be so involved that the necessary adjudication cannot
be had without considering it.   The effect of such adjudica-
tion upon the title is a different matter.   It cannot be di-
rectly conclusive on any rights of title.   *Edmond* v. *Canfield*,
*supra*.   The title to testate estate is derived from the will,
to intestate estate from the law ; this title may be incidently
affected by distribution or other probate action, but it can-
not be directly attacked and defeated in a Court of Probate.
*Dickinson* v. *Hayes*, 31 Conn. 417, 425 ; *Chamberlin's Appeal*,
*supra*.   The finding of the Court of Probate involves only a
conditional consideration of title, *i. e.*, for the purposes of a
judgment upon a matter within its jurisdiction, or, sometimes
a merely *prima facie* finding, as in *Chamberlin's Appeal.*

   In the present case, the denial of a distribution did not
settle the validity of the trust bequest.   The Court of Pro-
bate was dealing with the settlement of a testate estate.   It
might properly refuse distribution until the parties interested
had, by any of the methods open to them, successfully at-
tacked the title of the legatees ; then there would have been
intestate estate for the court to distribute.   If, however, a
legacy is, upon its face, plainly void, it may be the duty of
the Court of Probate to treat the amount of such legacy as
intestate estate, on the theory that no question of title really
exists.

   But whether a Court of Probate orders a distribution or
denies one, there is a right of appeal to the Superior Court ;
and this right exists although the action taken was extra

jurisdictional. *Edmond* v. *Canfield, supra*, p. 89. And the question then comes before that court, whether there is or is not intestate estate, whether the legacy is valid or void. The Superior Court may revoke the order because it was the exercise of unauthorized power under the form of determining a distribution, as in *Homer's Appeal, supra ;* it may affirm the order because the will whose construction is involved furnished *prima facie* ground for the action of the Court of Probate, as in *Chamberlin's Appeal, supra ;* but may it revoke the probate action as we are asked to do in this case, because the provisions of the will are in fact void ? The Court of Probate must have found that the bequests were not clearly void ; this was sufficient to justify its action in refusing distribution. The fact of distribution would not alter the title: *Dickinson* v. *Hayes, supra ;* and it was the duty of the Court of Probate not to complicate litigation in another court by an unnecessary act of distribution. But if the bequests are void, distribution ought to be granted as soon as that fact is legally ascertained. The action of the Court of Probate in granting distribution can have no binding effect upon this question of validity, and therefore it is only competent for that court to consider the question of a plain invalidity on the face of the legacy. Is this true of the Superior Court upon appeal ? The opinion of the Court of Probate cannot affect the validity of the bequest, because that is a matter beyond its jurisdiction ; but the opinion of the Superior Court may settle the question, because it is within its jurisdiction as a court of equity. It has indeed been held, and the law seems well settled, that " the Superior Court sitting for the trial of a case like this, takes the place of the probate court from which it came, and can do no more than could have been done by that court." *Hewitt's Appeal*, 53 Conn. 24, 35 ; *Mallory's Appeal*, 62 id. 218, 223. But this applies to specific relief granted, and not to modes of trial or the considerations upon which the conclusion reached may be based. The Superior Court is the court of general jurisdiction of all matters cognizable by any law court of which exclusive jurisdiction is not given to some other court. Upon

an appeal the question decided below comes to the Superior Court for a trial *de novo*, and is not confined to the facts presented by the probate record; *Davis's Appeal*, 39 Conn, 395, 401, and that trial is in a court of general and supreme jurisdiction. If the appeal is from the probate of a will, the trial is by jury which cannot be had in a Court of Probate, and so in the determination of error in the thing done the Superior Court must act as a court of general jurisdiction. The issue is defined by a court of limited jurisdiction; the trial and decision of that issue is controlled by a court of general jurisdiction. If the Superior Court cannot grant any specific relief which it was not in the power of the Court of Probate to grant, — this is so, not from want of jurisdiction of the subject-matter, but by reason of insufficient procedure; the entrance to the Superior Court for such purpose cannot be made through a probate appeal. Defects in procedure may be waived by parties in fact before the court, which may then exercise its jurisdiction if it thinks the interests of justice may thus be best served. The rule against such exercise in a class of cases is therefore a rule of judicial policy.

When the present appeal came to the Superior Court, it could affirm the denial of distribution because the Court of Probate did not err in holding that the bequests were not clearly void. This would ordinarily be the proper course; the heirs were entitled to no other course. But it is also within the power of the court to affirm the action below because the provisions of the will are valid. The court may rest its decision on such sufficient ground as it thinks policy or justice may require. The opinion of the Court of Probate on the construction of the will would have no weight, because it has no jurisdiction of such question; the opinion of the Superior Court would have authority, because it has jurisdiction. Inasmuch as such opinion furnishes a proper and conclusive reason for refusing distribution, and is directly involved in the decision of that question, we think the reasons that would make it merely *obiter*, if expressed by the Court of Probate, do not apply when the case is tried by the Superior Court. The difference is this: in the Court of

Probate an opinion on the construction of a will is upon a matter which, except as involved in the determination of some other question, is without its jurisdiction and therefore is wholly *obiter* in respect to that question; the operative force of the opinion is exhausted in the probate action taken; whereas upon trial in the Superior Court a similar opinion is upon matter within the jurisdiction of the court, given in a cause whose decision is justified by that opinion, and is therefore not *obiter*, but an authority on the same question of law in any other proceeding. This is true, whether the judgment rendered by the Superior Court in such case would or would not be a technical bar to any future action brought to directly test the title; practically, if affirmed by this court, it would end the litigation. Such course was taken in some of the cases before cited. In *Strong* v. *Strong*, 8 Conn. 408, 412, an opinion was expressed " to prevent litigation," when the court found that the proceedings in the Court of Probate were *coram non judice*. We do not, however, consider this case a safe precedent.

In the case at bar the contested clauses of the will give a small fund for a worthy charity; all the parties interested are before the court; all the facts pertinent to the question have been found; the question in all its bearings has been fully argued, and at the request of all the parties has been submitted for decision. If the distribution is denied merely on the ground that the provisions of the will are not clearly void, the settlement of the appellant's right to distribution would be postponed, and the fund may be subjected to the expense of another litigation involving precisely the same questions. We think the case presents an exception to the general rule we have just stated; that the Superior Court should in this case exercise its power to pass upon the whole question of the validity of the bequest in determining whether or not distribution should be granted, and that the expression of its opinion on this point is not *obiter*, but a legitimate reason for its action.

The claim of invalidity is confined to the 21st clause of the will. The testator, having given the property in question

to his executors in trust for the benefit of his nephew and
nieces until the death of the last survivor, gives it by this
clause, upon the termination of the first trust, to a corpora-
tion in trust to apply a portion, not exceeding a sum named,
towards the erection of a church on the land mentioned in
the gift, for the use of the Evangelical Lutheran Church, and
to apply the income of the remainder towards the support of
a pastor therefor and the maintenance of said church, paying
over said income in such manner as said corporation may
deem expedient for such purposes. The bequest is upon cer-
tain conditions as to which no question is made.

The maintenance of religious services in accordance with
the views of any denomination of Christians, is a public charity
within the meaning of our statute of charitable uses. " We
recognize the right of every man to establish foundations and
charities, to promote his own or any other peculiar religious
opinions." *First Cong. Soc.* v. *Atwater*, 23 Conn. 34, 42.
There is no uncertainty about the trust. The Evangelical
Lutheran Church is a known and established church. There
is no uncertainty about the beneficiaries, whether we regard
them as those who shall attend the services supported by the
trust fund, or as the inhabitants of Stamford where the place
of worship is to be established. All necessary power of
selection in providing the services is given to the trustee in
the will by the terms of the gift, and by vesting in it full
control in disbursing the income. Possibly some question
may arise in the execution of the trust, but of its validity
there can be no doubt. *Hughes* v. *Daly*, 49 Conn. 34, 35 ;
*Coit* v. *Comstock*, 51 id. 352, 357 ; *Tappan's Appeal*, 52 id. 412 ;
*Woodruff* v. *Marsh*, 63 id. 125, 126. The corporation named
in the will declined to accept the trust, and the Court of Pro-
bate properly appointed a trustee. The power of selection
passed to him as appurtenant to the trust. *Dailey* v. *New
Haven*, 60 Conn. 314. The claim that the bequest is obnox-
ious to our late statute of perpetuities is idle.

The Superior Court is advised to affirm, for the reason
given in the opinion, the action of the Court of Probate in

refusing to distribute the estate in the hands of the administratrix.

In this opinion the other judges concurred.