THE CHASE NATIONAL BANK OF NEW YORK CITY ET
AL., EXECUTORS (ESTATE OF PHILIP SCHLEUSS-
NER) *vs.* MATILDA H. SCHLEUSSNER ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 8th—decided August 8th, 1933.

*John D. Fearhake,* for the plaintiff.

*Charles D. Lockwood* and *Mortimer L. Doolittle,* with whom was *Walter N. Maguire,* for the defendants Matilda H. Schleussner *et als.*

*Norris E. Pierson* and *Dana S. Hawthorne,* for the defendants Otto W. Schleussner *et als.*

MALTBIE, C. J. Philip Schleussner died in Stamford March 21st, 1931, leaving a will dated November 6th, 1929. He was survived by his father and mother, his widow, a daughter, a son, who was a minor, two brothers and a sister, all of whom are alive. In his will he made the following provisions: He gave his personal belongings to his wife and children and he also gave to them a collection of porcelain and one of books, but with certain provisions for their disposition if neither child evinced an interest in them. He provided for the sale of his real estate in Stamford by the executors and the addition of the proceeds to the corpus of his estate. Article Sixth of the will is as follows: "ARTICLE SIXTH: In the event that my net estate, as hereinafter defined and determined, be equal to or exceed the sum of One Million ($1,000,000) dollars, then and in that event I direct my Executors, hereinafter named, to pay one percent (1%) of the amount of my said net estate to each of the three per-

sons hereinafter named, as soon as may be after my death. I direct my Executors for their guidance in determining the amount of my net estate to base said legacies upon the amount remaining in my estate after paying, or making due provision for the payment of, all funeral and administration expenses, all other legal claims and charges against my estate by any creditors, if such there be, all Personal and Real Estate Taxes, all State Transfer or Succession Taxes, Income, and Federal Estate Taxes, and all other charges, of every nature and kind whatsoever, whether the same be Government charges or other legal claims against my estate incurred prior to or during the administration of same." He named as the three persons referred to in this Article his two brothers and his sister. He gave the residue of his estate to the plaintiff bank as trustee to hold and invest, to divide into four equal shares, to pay from the proceeds an annuity of $3000 to his father and mother, and to pay the remaining income to his wife and children for their lives, with a disposition of the principal at their death. He gave the trustee various powers and provided that if it deemed it advisable to divide the estate and distribute it or any part of it to the beneficiaries, such valuation or appraisal of the assets as the trustee should make in distributing it, if in kind, should be conclusive and final. He named the plaintiff bank and his wife as executor and executrix of the will.

The appraisal of the estate as of the time of his death amounted to $1,656,501.49. The expense of settling the estate and other allowable charges paid by the executors amount to $196,062.92 and there are certain unpaid obligations of the decedent and his estate which the executors estimate at a maximum amount of $79,360.23. There was a gross income during the settlement of the estate up to November 1st,

1932, amounting to $58,641.62. Including this income, and not deducting the estimated amount of unpaid obligations accrued or to accrue, the value of the assets in the hands of the executors amounted on November 1st, 1932, to $829,133.33.

The first question arising under the stipulation concerns the method of determining the "net estate" mentioned in the Sixth Article, upon the amount of which depends the right of the testator's brothers and sister to receive the legacies therein provided. They contend that the "net estate" should be determined by deducting from the appraised value of the estate at the decedent's death the charges against it mentioned in that Article. We are not able to accept that contention. The primary purpose of the testator was to provide an income for his wife and children so long as they lived by means of the trust fund which he established. The legacies to his brothers and sister were entirely subordinated to that purpose and were only to be paid in the event that the testator's "net estate" as defined in the will amounted to at least $1,000,000. The testator made his will at a time when values were fluctuating rapidly. The amount which his widow and children would receive would depend, not upon the value of the estate at the time of his death, but upon the amount which ultimately went into the trust fund. It is far more probable that the testator was thinking of that amount than that he intended the "net estate" to be based upon the value of his property at his death less the allowable deductions, a "net estate" which might fall far short of producing the income which he evidently desired his widow and children to receive.

That he intended a "net estate" determined as of the time of distribution appears in the very terms of the Sixth Article. He directs his executors "for their

guidance in determining" the "net estate" to base the legacies upon the "amount remaining" in his estate after paying or "making due provision for the payment of" the charges specified. Herein he indicates that this determination is to be made by the executors after the charges have been paid or "due provision" made for them, which could only be done after the administration had proceeded sufficiently far so that the executors might file a final account acceptable to the Court of Probate as preliminary to a distribution of the estate. The testator would hardly have used the form of expression he did, had he intended that the "net estate" should be determined by deducting from the appraised value of his assets the charges specified; a "net estate" so determined could hardly be "the amount remaining in my estate" after payment or making due provision for the payment of the deductible charges.

It is true that the will makes no provision for a reappraisal of the assets of the estate for the purpose of determining whether the "net estate" is sufficiently large so that the brothers and sister have any legacy and, if they do, how much is to be paid them. Section 4894 of the General Statutes provides that when a testator shall order an estate to be divided among two or more devisees or legatees without appointing any person to divide it, the court may appoint three disinterested persons to make the division. If the testator appoints some person to make that division, the Court of Probate has no jurisdiction to appoint distributors, unless the person named in the will becomes incapacitated. *Strong* v. *Strong*, 8 Conn. 408, 412; *Walker* v. *Upson*, 74 Conn. 128, 131, 49 Atl. 904. The Article in question reads: "I direct my Executors for their guidance in determining the amount of my net estate" etc. This provision carries a clear impli-

cation that it was the testator's intention that the executors should determine the amount of the net estate at least in the first instance. That he meant to vest them with this power gathers support from other provisions in the will and surrounding circumstances. The bank, named executor, was also the trustee to whom the residue was given. The testator directed it as trustee to divide the trust fund into four equal parts for the administration of the trust, and this would necessarily involve the determination of the value of the assets composing the fund; and he provided that if the trustee deemed it advisable to make any division of the trust estate and to distribute it or any part of it to the beneficiaries, the valuation and appraisal it made should be final. The estate, aside from the testator's personal belongings and the collections of porcelain and books which were specifically bequeathed, and his "estate" at Stamford, consisted almost wholly of stocks and bonds, the value of which could easily and with reasonable certainty be fixed by a large New York bank, and the wide discretionary powers reposed in the plaintiff bank as trustee, as appear in the provisions of the will we have referred to and others, show the great trust and confidence the testator had in it.

The determination of the net estate was therefore by the terms of the will left in the first instance to the executors and the statute as to the appointment of persons to divide a testate estate to which we have referred does not apply. It does, however, have this significance: Determination of the net estate, if made by distributors appointed by the Court of Probate, would be based upon the value of the assets comprising the estate as found by them at the time the distribution was made; *Platt* v. *Platt,* 42 Conn. 330, 346; and it is significant that in one case where the power

to divide an estate was left by a testator to his widow and she died before completing it, we held that distributors appointed to complete the division should proceed upon the values as existing when they made it. *Walker* v. *Upson, supra.*

This does not mean, however, that the valuation of the assets of the estate by the executors is necessarily final and conclusive. Section 4977 of the General Statutes provides that the Court of Probate shall ascertain the heirs and distributees of a testate estate "so far as the will may leave the same indefinite and necessary to be defined." In performing that duty the Court of Probate has jurisdiction to determine such incidental questions as are necessary to a correct conclusion. *Mack's Appeal,* 71 Conn. 122, 129, 41 Atl. 242; *Eliot's Appeal,* 74 Conn. 586, 601, 51 Atl. 558; *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 600, 98 Atl. 129. If the brothers and sister are entitled to share in the estate they become with the trustee distributees of the residue; if they are not entitled to share in it, the trustee becomes the sole distributee. If a situation develops where there is uncertainty as to whether or not the "net estate" amounts to $1,000,000 or more, the Court of Probate upon application can determine that question in the exercise of its power to ascertain the proper persons to take it.

The amount of the net estate is then to be determined by the executors, subject to an application to the Court of Probate as we have indicated, upon the basis of the value of the assets at the time they file their account preliminary to a distribution of the property. We are asked whether the income received during the settlement of the estate is to be included in determining that amount. Those who are given the life uses of the trust fund distributed to the trus-

tee are entitled to receive so much of the income accruing after the testator's death and prior to distribution as is found to have accrued upon the portion of the estate distributed to the trustee, upon the assumption that all parts of the estate have earned income at a uniform rate; this portion of the income belongs to them as an incident of the life uses created; it does not form a part of the residue; but it is to be paid to the trustee as a special fund to be by it distributed to the life beneficiaries. *Bancroft* v. *Security Co.,* 74 Conn. 218, 222, 50 Atl. 735; *Webb* v. *Lines,* 77 Conn. 51, 53, 58 Atl. 227; *Fanning* v. *Main,* 77 Conn. 94, 98, 58 Atl. 472; *Hewitt* v. *Hicock,* 96 Conn. 176, 180, 113 Atl. 172; *Hayward* v. *Plant,* 98 Conn. 374, 387, 119 Atl. 341; *Stanley* v. *Stanley,* 108 Conn. 100, 108, 142 Atl. 851. On the other hand, the legacies to the brothers and sister, if any, being outright gifts, are not entitled to any part of the income earned during the settlement of the estate, but the income which would have gone to them, had they been given a life interest in a portion of the trust fund, becomes a part of the residue. *Stanley* v. *Stanley, supra.*

We interpret the provision that the executors are directed "to pay one percent (1%) of the amount of my said net estate" to the brothers and sister as meaning a payment in money and not a division in kind. The word "pay" contains in its primary significance the suggestion of satisfaction made in money. *Bailey's Estate,* 276 Pa. St. 147, 152, 119 Atl. 907; *Krahn* v. *Goodrich,* 164 Wis. 600, 610, 160 N. W. 1072. But the word is often used in testamentary dispositions in the sense of transfer; *Clarke's Appeal,* 70 Conn. 195, 216, 39 Atl. 155; *Horton* v. *Upham,* 72 Conn. 29, 43 Atl. 492; particularly when used in the phrase, "pay over." *State* v. *Thresher,* 77 Conn. 70, 58 Atl. 460; and see *Trowbridge* v. *Townsend,* 112 Conn. 104, 135

Atl. 345. It is also true that in this will the testator used the two expressions "pay" and "pay over" interchangeably, and where he was referring to the disposition of the corpus of the trust estate, he used the former word obviously with the meaning of transfer. But the phrase used in the Sixth Article taken as a whole, "to pay one percent (1%) of the amount of my said net estate" indicates very clearly that, as counsel for the brothers and sister express it, the testator was thinking in terms of *quantum* and not of *res*. But, as such legacies are not payable in any event until the time for the distribution of the estate has arrived, they do not draw interest until that time. *Duffield* v. *White,* 71 Conn. 521, 530, 42 Atl. 641; *Beardsley* v. *Bridgeport Protestant Orphan Asylum,* 76 Conn. 560, 564, 57 Atl. 165; *Miller* v. *Metcalf,* 77 Conn. 176, 180, 58 Atl. 743.

We understand counsel for other parties than the brothers and sister to concede that the personal property specifically bequeathed in the will, although not mentioned in the Sixth Article, should not be deducted in the determination of the "net estate."

We answer the questions propounded as follows: To questions one, two, three and nine we say that the amount of the "net estate" referred to in the Sixth Article of the will is to be determined by the executors—subject to the right of any party in case of uncertainty to invoke the jurisdiction of the Court of Probate to determine the question — as of the time when their account to the Court of Probate preliminary to the distribution of the estate is accepted, upon the basis of a valuation then made by them of the assets in their hands after the personal property specifically bequeathed has been delivered by them, they have paid or made proper reserves to pay the various charges mentioned in the Article, and have

added to the principal the portion of the income accruing during the settlement of the estate to which the life beneficiaries of the trust established in the Seventh Article are not entitled. To questions four and five we answer "No." To question ten we answer that the legacies to the brothers and sister, if they are entitled to any, are to be paid in cash. To question twelve, we answer, "No." The other questions propounded require no answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.