Hartford National Bank and Trust Company, Executor (Estate of Wallace W. Willard) *v.* W. Kenneth Willard et al.

Loiselle, Bogdanski, Longo, Speziale and Healey, Js.

Argued March 7—decision released July 11, 1978

*John B. Willard,* for the appellants (defendants W. Kenneth Willard et al.).

*Mary M. Ackerly,* for the appellee (plaintiff).

*John D. Dragat,* for the appellees (defendants Hartford National Bank and Trust Company and John L. Eliot, Jr., cotrustees [Estate of Marguerite L. Eliot]).

SPEZIALE, J.  The defendants W. Kenneth Willard, Howard A. Willard, Jr., John B. Willard, Martha Willard de Richemont, Virginia Willard Baer, Parmelia Willard de Winter, Palmer S. Willard, and William L. Willard III (hereinafter the Willard defendants) have appealed from a judgment of the Superior Court distributing the proceeds from the sale of a certain parcel of real estate in Clinton, Connecticut.  The court determined that a one-third share of the proceeds should be distributed to the nieces and nephews of Palmer S. Willard, pursuant to a stipulation filed by the parties.  The other two one-third shares were to be distributed as follows: one to the Hartford National Bank and Trust Company as executor of the estate of Wallace W. Willard; and one to John B. Eliot, Jr. and Hartford National Bank and Trust Company as cotrustees under the will of Marguerite Eliot.  The Willard defendants claim that the court erred in its determination of title and ownership of the latter two one-third shares in the property.

The action was instituted by the plaintiff, Hartford National Bank and Trust Company, as executor under the will of Wallace W. Willard, seeking partition by sale of the Clinton property.  The parties

subsequently stipulated that the real estate would be sold by a committee and that the court would determine the share to which each of the parties was entitled. All of the claims to the proceeds stem from the ownership of the property by Palmer S. Willard, who died testate on April 29, 1929, survived by his wife, Henrietta, and two daughters of a former marriage, Jane and Marguerite.

Pursuant to Palmer's will, the residue of his estate, including the Clinton property, was distributed by decree of the Probate Court for the district of Hartford to the Riverside Trust Company and Henry G. Willard as cotrustees, the trust estate to be divided into *three* equal shares: one share for the benefit of *Henrietta,* one for the benefit of *Jane,* and one for the benefit of *Marguerite.* The will provided for each of the beneficiaries to receive the net income from her share for life. Upon the death of Henrietta, the trust for her benefit was to be divided into two equal shares to be held in trust, one for the benefit of Jane, and the other for Marguerite. Upon the death of each of the daughters, the trusts for her benefit were to terminate, and the principal paid to her issue, or, if she died without issue, to her "heirs at law and next in kin . . . surviving at that time absolutely."[1]

---

[1] The relevant provisions of Palmer S. Willard's will read as follows:

"Fourth: I give, devise and bequeath to Riverside Trust Company, a legal corporation under the laws of the State of Connecticut and having its offices in the City and County of Hartford in said State, and to Henry G. Willard, of the Town of Wethersfield, in said State, all the rest, residue, and remainder of my property, real and personal, of whatever kind or wherever situated.

IN TRUST NEVERTHELESS:

For the following uses and purposes:

A. To hold, manage, invest and reinvest the principal, collect the income and after the payment of all taxes, charges, commissions

## Jane's Share

Jane died in 1947 without issue. Upon her death, the trust for her benefit terminated, and the Probate Court found the sole distributee to be her sister, Marguerite. By deed dated August 25, 1948, Marguerite deeded this one-third fee interest (originally Jane's share) in the property, in trust for her benefit, to Riverside Trust Company as trustee, and to Wallace W. Willard as successor trustee under a 1932 agreement between herself and Riverside Trust Company and Henry G. Willard (Wallace's father).

Marguerite died in 1952, survived by her husband John L. Eliot, Jr., hereinafter John Eliot, but leaving no issue. Under her will, which was

---

and other expenses of the trust to divide the principal of the trust estate into three equal parts or shares, one share for Henrietta Parker Willard, wife of the Testator; one share for Jane Chalker Willard, daughter of the Testator; and one share for Marguerite Southworth Willard, daughter of the Testator; to pay over the net income from each respective share to the beneficiary thereof for life.

B. Upon the death of said Henrietta Parker Willard, the Trustees shall divide the principal of the fund so held for her benefit into two equal parts or shares, one share to the said Trustees hereunder the net income of said share to be paid over to my daughter, Marguerite Southworth Willard for life. Upon the death of my said daughter this trust shall terminate and the Trustees shall pay over and deliver to the issue of my said daughter the principal of the fund then remaining in hand in equal shares per stirpes and not per capita absolutely, and, in the event of the death of my said daughter without leaving issue then the said share of principal shall be paid over and delivered to the heirs at law and next in kin of my said daughter, surviving at that time absolutely.

C. The other of said shares of the fund so held for the benefit of Henrietta Parker Willard, shall be held by my said Trustees hereunder, the net income of said share to be paid over to my daughter, Jane Chalker Willard for life. Upon the death of my said daughter this trust shall terminate and the Trustees shall pay over and deliver to the issue of my said daughter the principal of the fund then

admitted to probate in 1952, John Eliot and Wallace W. Willard qualified as executors and trustees. In April, 1953, Riverside Trust Company and Wallace W. Willard, as cotrustees under the 1948 trust agreement with Marguerite, deeded her one-third fee interest (originally Jane's share) in the Clinton property to John Eliot and Wallace W. Willard as executors under her will. By certificate of distribution from Marguerite's estate, on March 11, 1970, this property was set out to Wallace W. Willard and John Eliot as cotrustees under her will—which will provided that there always be a cotrustee with John Eliot.

On August 6, 1970, Wallace W. Willard resigned as cotrustee under Marguerite's will; Hartford National Bank and Trust Company was simultaneously appointed as successor cotrustee with John

remaining in hand in equal shares per stirpes and not per capita absolutely, and, in the event of the death of my said daughter without leaving issue then the said share of principal shall be paid over and delivered to the heirs at law and next in kin of my said daughter, surviving at that time absolutely.

D. Upon death of the said Marguerite Southworth Willard the trust created for her benefit under Section A, hereof, shall terminate and the Trustees shall pay over and deliver to the issue of my said daughter the principal of the fund then remaining in hand in equal shares per stirpes and not per capita absolutely, and, in the event of the death of my said daughter without leaving issue then the said share of principal shall be paid over and delivered to the heirs at law and next in kin of my said daughter, surviving at that time absolutely.

E. Upon the death of the said Jane Chalker Willard the trust created for her benefit under Section A hereof, shall terminate and the Trustees shall pay over and deliver to the issue of my said daughter the principal of the fund then remaining in hand in equal shares per stirpes and not per capita absolutely, and, in the event of the death of my said daughter without leaving issue then the said share of principal shall be paid over and delivered to the heirs at law and next in kin of my said daughter, surviving at that time absolutely."

Eliot,[2] and has continued in that capacity to the present date. Subsequently, on February 24, 1971, John Eliot, individually, executed a quitclaim deed to John B. Willard of "his interest" in the real estate acquired from the estate of Marguerite. Hartford National Bank and Trust Company, as cotrustee with John Eliot, did not join in the conveyance to John B. Willard.

It is on the basis of this quitclaim deed from John Eliot that John B. Willard, one of the appealing defendants, argues that he—not John Eliot and Hartford National Bank and Trust Company as cotrustees—is entitled to the sale proceeds from the one-third interest in the Clinton property which was originally Jane's share. (See I, infra.)

### Marguerite's Share

As noted, Marguerite died without issue, survived by her husband John Eliot. As of her death, her closest living blood relatives were her uncles, Henry G. Willard and Howard A. Willard. After a hearing held on January 22, 1953, the Hartford Probate Court ordered distribution of the trust for the benefit of Marguerite which had been established pursuant to Palmer's will. The principal remaining in the trust, including a one-third interest (originally Marguerite's share) in the Clinton property, was ordered distributed to John Eliot, who the court determined was the appropriate distributee under the terms of Palmer's will. Due notice of the hearing was given to John Eliot, Henry G.

[2] John Eliot and Hartford National Bank and Trust Company, as cotrustees of the trust created under the will of Marguerite, were joined as defendants in the partition action brought by the plaintiff, Hartford National Bank and Trust Company as executor of the estate of Wallace W. Willard, deceased.

Willard and Howard A. Willard. No appeal was ever taken from the action of the Probate Court. By deed dated August 13, 1953, John Eliot conveyed the one-third interest (originally Marguerite's share) distributed to him pursuant to the Probate Court decree to Wallace W. Willard. When Wallace died on October 4, 1970, Hartford National Bank and Trust Company was named executor under his will. It is in this capacity that the plaintiff bank brought the partition action and claimed a one-third share of the proceeds of the sale.

### Henrietta's Share

Henrietta died in October, 1967, having outlived both Jane and Marguerite. Henry G. Willard and Howard A. Willard, the two brothers of Palmer who had been alive at Marguerite's death, predeceased Henrietta as well. In 1970, the Superior Court (*McGrath, J.*) determined that, under the provisions of Palmer's will, the heirs-at-law and next-of-kin entitled to distribution of the trust for the benefit of Henrietta were Palmer's surviving nieces and nephews—Marguerite's ten first cousins. In accordance with this decree, one-third of the proceeds from the sale of the Clinton property was distributed in equal shares to the ten nephews and nieces by stipulation of the parties.

It is the claim of the Willard defendants on appeal that the 1970 Superior Court judgment, ascertaining the heirs-at-law and next-of-kin as of *Henrietta's* death, is binding on a probate court and that, therefore, it is the nieces and nephews, rather than John Eliot, who are the heirs-at-law and next-of-kin as of *Marguerite's* death. On this basis the Willard defendants argue that the one-third share (originally Marguerite's share) which was dis-

tributed to John Eliot pursuant to the 1953 probate decree and then conveyed by John Eliot to Wallace W. Willard—and which is now claimed by Hartford National Bank and Trust Company as executor of Wallace's estate—should rightfully be apportioned equally among the surviving nieces and nephews of Palmer Willard. (See II, infra.)

I

We first address the contention of the defendant John B. Willard that he is individually entitled to a full one-third share (originally Jane's share) of the proceeds of the sale by virtue of the 1971 quit claim deed of the property from John Eliot to himself. We find this claim to be without merit.

This share of the property, originally held in trust for the benefit of Jane under Palmer's will, vested absolutely in Marguerite as Jane's next-of-kin at Jane's death. Marguerite conveyed this one-third fee interest to the Riverside Trust Company and Wallace W. Willard as cotrustees. Upon the death of Marguerite, those trustees conveyed the fee interest they held in trust to the executors of Marguerite's estate, and the interest passed under the terms of her will. It was ultimately distributed to Wallace W. Willard and John Eliot as cotrustees under the will.

"[I]t is well established that the mere inventorying of an asset has no effect upon the rights of an adverse claimant. *Gold's Appeal*, Kirby 100, 103; *Lynch* v. *Skelly*, 138 Conn. 376, 379, 85 A.2d 251. A probate court has no power to make final determinations of title where title is disputed. It may make such incidental determinations of questions of title as are necessary to enable it to carry out its statutory duties; *Chamberlin's Appeal*, 70 Conn.

363, 378, 39 A. 734; but such determinations have no res judicata effect and are not binding upon the adverse claimants. *Mack's Appeal,* 71 Conn. 122, 130–31, 41 A. 242." *Lenge* v. *Goldfarb,* 169 Conn. 218, 221, 363 A.2d 110 (1975). On the other hand, where title is not in dispute, a probate court clearly has jurisdiction to order distribution or conveyance of property, and the probate decree will be binding on anyone who does not have a direct claim to title. See *Brookfield* v. *Hutchins,* 126 Conn. 435, 11 A.2d 853 (1940). John B. Willard has no claim to title adverse to that of Marguerite. Therefore he lacks standing to challenge the inclusion of the property (originally Jane's share) in Marguerite's estate or its subsequent distribution by the Probate Court under the terms of her will.

Approximately five months after the March, 1970, distribution of this one-third interest to Wallace W. Willard and John Eliot as cotrustees, Wallace resigned as cotrustee and Hartford National Bank and Trust Company was simultaneously appointed in his place. The trial court specifically found that John Eliot and Hartford National Bank and Trust Company have continuously acted as cotrustees under Marguerite's will from August 6, 1970, to the present date.

On February 24, 1971, John Eliot, individually, executed a quitclaim deed to John B. Willard of "his interest" in the real estate acquired from Marguerite's estate. On that date, however, Eliot held title only in his fiduciary capacity as cotrustee with Hartford National Bank and Trust Company. Therefore, he had, *individually,* no interest in the fee to the real estate which he could convey. Moreover, John Eliot as *cotrustee* could not convey title effectively without being joined by Hartford

National Bank and Trust Company. 76 Am. Jur. 2d, Trusts, § 299; Bogert, Trusts (5th Ed.) § 91. Since Eliot was not joined in the conveyance by the bank as cotrustee, the conveyance had no legal effect.

John B. Willard's claim to a full one-third share of the proceeds by virtue of the quitclaim deed from John Eliot must consequently fail: there has been no challenge to the inclusion of this fee interest in Marguerite's estate; the interest was distributed to cotrustees pursuant to Marguerite's will; and there has been no valid conveyance by the cotrustees. The trial court thus properly concluded that Hartford National Bank and Trust Company and John Eliot, cotrustees under Marguerite's will, are entitled to this third (originally Jane's share) of the proceeds of the sale.

## II

We turn now to the claim of the Willard defendants that on the basis of the 1970 Superior Court judgment following Henrietta's death, they, as the surviving nieces and nephews of Palmer S. Willard, are entitled to the one-third interest (originally Marguerite's share) in the Clinton real estate distributed pursuant to the 1953 probate decree to John Eliot as Marguerite's next-of-kin, and subsequently conveyed by Eliot to Wallace W. Willard. In denying the claim of the Willard defendants, the trial court concluded that Hartford National Bank and Trust Company, as executor under Wallace's will, is entitled to the proceeds from the sale attributable to this one-third interest. We agree.

A brief restatement of the relevant facts will help to focus this issue. At the time of Marguerite's death in 1952, her closest living blood relatives were her uncles, Henry and Howard. After due notice

to Marguerite's husband, John Eliot, and to Henry and Howard, the Probate Court held a hearing in 1953 and ordered distribution of the trust held for the benefit of Marguerite to John Eliot as her heir and next-of-kin under the terms of Palmer's will. John Eliot conveyed the one-third interest in real estate (originally Marguerite's share) which he received from this distribution to Wallace W. Willard. No appeal was ever taken from the action of the Probate Court ascertaining John Eliot as the appropriate distributee and ordering distribution to him.

Henrietta died in 1967. Both Henry and Howard had predeceased her. The trustee under Palmer's will brought an action in Superior Court for construction of Palmer's will to determine the appropriate distributees of the trust established under the will for the benefit of *Henrietta*. The crucial issue in that case was whether the heirs-at-law and next-of-kin referred to in Palmer's will were to be determined as of the death of Jane and Marguerite, respectively, or as of the death of Henrietta. The Superior Court concluded that it was the expressed intent of Palmer S. Willard that the principal remaining in trust be distributed to the heirs-at-law and next-of-kin of Jane and Marguerite, to be determined as of the date of death of the life tenant, Henrietta. It further concluded that the heirs-at-law and next-of-kin of Marguerite *"at the date of death of the life tenant, Henrietta Parker Willard,* were her ten first cousins and did not include her husband, John L. Eliot, Jr." (Emphasis added.)

It is thus evident that the Superior Court judgment did *not* ascertain the heirs-at-law and next-of-kin of Marguerite as of Marguerite's death. On the

contrary, it specifically concluded that, for the purposes of its decision, the heirs and next-of-kin had to be determined as of the date of *Henrietta's* death.

The 1953 probate decree distributing a one-third share of the Clinton real estate to John Eliot was based on the determination of the Probate Court that Eliot was Marguerite's heir-at-law and next-of-kin, under Palmer's will, as of the date of *Marguerite's* death. While it is true that a probate court lacks direct jurisdiction to construe wills— a function reserved for the Superior Court—it may ascertain distributees of a testate estate insofar as the will may leave the same necessary to be defined. General Statutes § 45-272. In performing its duty to ascertain distributees, a probate court has jurisdiction to consider questions incidental to such a determination, even though this may entail construing a will. *Culver* v. *Union & New Haven Trust Co.,* 120 Conn. 97, 102–103, 179 A. 487 (1935) ; *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 376, 167 A. 808 (1933); *Mack's Appeal,* 71 Conn. 122, 129–31, 41 A. 242 (1898); *Chamberlin's Appeal,* 70 Conn. 363, 378, 39 A. 734 (1898) ; 1 Locke & Kohn, Conn. Probate Practice §§ 74, 93.

Because a probate court has only incidental jurisdiction in such matters, the effect of a probate adjudication is not conclusive, but may be attacked collaterally in an action brought in Superior Court. *Brownell* v. *Union & New Haven Trust Co.,* 143 Conn. 662, 666, 124 A.2d 901 (1956) ; *Mack's Appeal,* supra, 131; 1 Locke & Kohn, op. cit. §§ 140–41. It would appear that this is the source of the Willard defendants' claim that the 1970 Superior Court judgment is controlling in relation to the Probate Court's distribution of the one-third share under

Palmer's will. The short answer, however, is simply that the Superior Court judgment had no bearing on the prior probate decree; the issues before the two courts were not the same.

The Probate Court had incidental jurisdiction to ascertain the heirs and next-of-kin of Marguerite under Palmer's will; therefore, the decree ordering distribution to John Eliot is valid. Further, there has been no collateral attack, by means of an action in Superior Court for construction of Palmer's will, by anyone with standing to challenge this aspect of the probate decree.[3] Thus, the trial court correctly concluded that on the basis of the conveyance of Marguerite's original share from John Eliot to Wallace W. Willard, the plaintiff Hartford National Bank and Trust Company, executor of Wallace's estate, was entitled to one-third of the proceeds from the sale of the Clinton real estate.

There is no error.

In this opinion the other judges concurred.

---

[3] Under the circumstances presented in this case, it appears that only Henry and Howard, Marguerite's uncles alive at her death, would have had standing to challenge the disposition of the trust under Palmer's will. After their deaths, the executors of their estates would be the only parties with standing. See *City Trust Co.* v. *Bulkley,* 151 Conn. 598, 603, 201 A.2d 196 (1964).